896 P.2d 989

Del SUTHEIMER and Sheila Sutheimer, husband and wife, Plaintiffs–Respondents,

v.

Denis STOLTENBERG and Pat Stoltenberg, husband and wife, The Lodge at Palisades Creek, Inc., an Idaho corporation, and South Fork Ranch, Inc., an Idaho corporation. Defendants–Appellants.

No. 20691.

Court of Appeals of Idaho.

June 1, 1995.

Hopkins, Roden, Crockett, Hansen & Hoopes, Idaho Falls, for appellants. C. Timothy Hopkins argued.

McGrath, Baker & Marotz, Idaho Falls, for respondents. Stephen J. McGrath argued.

LANSING, Judge.

This case involves a dispute over twenty acres of land in Bonneville County. The holders of an option to purchase the property brought this action for specific enforcement of their right to purchase pursuant to the option contract. The district court granted summary judgment to the purchasers, ordering that the property be conveyed to them. The sellers have appealed. Because we find that no genuine issue of material fact exists and that the purchasers are entitled to judgment as a matter of law, we affirm.

## I. FACTS

Denis and Pat Stoltenberg were the owners of approximately 260 acres of real estate in Bonneville County, including the twenty-acre parcel in dispute. The entire 260 acres were subject to a mortgage held by the Farmers Home Administration (FmHA). An agreement between the Stoltenbergs and FmHA, referred to as a "shared appreciation agreement," provided that any sale of the property was subject to approval by FmHA. FmHA regulations governing the agreement provided that no sale would be approved unless the sale price equaled or exceeded the appraised value of the property at the time of sale. In early 1990 when the Stoltenbergs entered into the shared appreciation agreement with FmHA, an appraiser valued the property at approximately $800 per acre.

In August 1990, the Stoltenbergs agreed they would sell the twenty-acre parcel to Del and Sheila Sutheimer for $1,400 per acre or a total purchase price of $28,000. The Sutheimers were prepared to pay $1,500 immediately, but because they needed to sell their existing residence before completing the purchase, it was agreed that the Sutheimers would have two years within which to tender

the remainder of the purchase price and that if they did not tender the balance within such two-year period, the $1,500 would be retained by the Stoltenbergs. On October 29, 1990, the parties signed a simple written contract prepared by the Sutheimers which expressed these terms as follows:

This is an agreement between the parties of Denis and Pat Stoltenberg, and Del and Sheila Sutheimer on the purchase of twenty acres of land that the Stoltenbergs own. (Legal decription [sic] attached) The Sutheimers agree to pay for the survey, recording, and title search fees. The Stoltenbergs will receive a down payment of $1500.00 to be applied to the purchase price of $28,000.00. If in the event that the full remaining amount of $26,500.00 is not paid within two (2) years of this date, the Stoltenbergs will retain the down payment and this agreement will become null and void.

According to the Stoltenbergs, during the contract negotiations they informed the Sutheimers that the sale had to be approved by FmHA before it could be effectuated. However, neither the Stoltenbergs nor the Sutheimers envisioned that this would present any difficulty since the agreed price of $1,400 per acre was substantially more than the $800 per acre appraised value assigned to the property by FmHA just months earlier.

In early 1991, The Lodge at Palisades Creek, Inc. (the Lodge) approached the Stoltenbergs with an offer to purchase the entire 260-acre parcel, including the subject twenty acres. In May 1991, the Stoltenbergs presented the Sutheimer contract to FmHA and FmHA ordered that the property be reappraised. On June 18, 1991, following completion of the appraisal, FmHA disapproved the Sutheimers' contract because the property now was appraised at approximately $2,800 per acre. The Stoltenbergs promptly informed the Sutheimers of this rejection by FmHA and offered to return the $1,500 down payment. The Sutheimers, however, refused the refund and expressed their continued desire to purchase the property.

Meanwhile, the Stoltenbergs also presented the Lodge's offer to FmHA. FmHA approved the proposed sale to the Lodge. On October 1, 1991, the FmHA mortgage was released on the entire 260 acres, and the property was sold to the Lodge. The property was subsequently conveyed to South Fork Ranch, Inc. (South Fork), a corporate affiliate of the Lodge. Both the Lodge and South Fork took the property with full knowledge of the Sutheimers' claim.[1]

On August 14, 1992, the Sutheimers, through their attorney, tendered to the Stoltenbergs the balance of the purchase price under their contract and requested a warranty deed to the property. The tender and request for a deed were refused. The Sutheimers then brought this action against the Stoltenbergs, the Lodge and South Fork, claiming a right to specific performance of the contract or in the alternative for damages arising from its breach and seeking to quiet title as against the Lodge and South Fork.

The Sutheimers filed a motion for summary judgment. In response to the motion, the Stoltenbergs argued that FmHA's rejection of the Sutheimer contract made performance impossible and thereby discharged the Stoltenbergs' contractual obligation. The district court granted summary judgment in

---

1. The sale contract between the Stoltenbergs and the Lodge specified that the transaction was subject to the Sutheimer agreement and provided as follows for the contingency that the Sutheimers might assert rights under the contract:

... Sellers shall deposit in trust with the ... attorneys for Buyer herein, the sum of One Thousand Five Hundred and No/100ths Dollars ($1,500.00), to be payable as follows:

a. In the event that Sutheimers do not exercise that certain option to which this Agreement has been made subject then an [sic] in that event and promptly after said option has been allowed to lapse, said deposit shall be returned to Sellers;

b. In the event said option is exercised within the period of time required thereby and in the event it should be successfully contested by Buyer, then and in such event, promptly following the successful effort to defense [sic] against the exercise of said option, said deposit shall be returned to Sellers; and,

c. In the event that said option is exercised and Buyer is compelled to convey said property subject to said option to Suitheimers [sic] or their assignees, then and in that event Buyer shall retain said deposit.

The deed from the Lodge to South Fork was also expressly subject to the Sutheimers' interest.

favor of the Sutheimers, and directed that the property be conveyed to them. The court reasoned that the contract at issue was an option contract, that the time for the Stoltenbergs' performance did not occur until the Sutheimers elected to exercise the option in August 1992, and that there was then no impossibility because FmHA's mortgage had been released before the option was exercised.

From this judgment the defendants have appealed. They argue: (1) that FmHA's disapproval of the Sutheimer contract made Stoltenbergs' performance impossible, (2) that FmHA's approval was a condition precedent to the Stoltenbergs' duty to perform, and (3) that the parties entered into the contract based upon a mutual mistake as to FmHA's willingness to approve the contract, which mutual mistake makes the contract voidable.[2]

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when, based upon the pleadings, depositions, admissions, affidavits and answers to interrogatories on file, genuine issues of material fact are absent and the case can be decided as a matter of law. I.R.C.P. 56(c), *Moss v. Mid–American Fire and Marine Insurance Co.*, 103 Idaho 298, 647 P.2d 754 (1982); *Galindo v. Hibbard*, 106 Idaho 302, 678 P.2d 94 (Ct.App.1984). A trial court must liberally construe the facts in favor of the party resisting a motion for summary judgment. *Mitchell v. Siqueiros*, 99 Idaho 396, 398, 582 P.2d 1074, 1076 (1978). However, if an action will be tried before the court without a jury, the court is not constrained to draw inferences in favor of the party opposing a motion for summary judgment. Rather, the trial court is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts since it will ultimately be responsible for doing so at trial. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). *See also Anderson v. Farm Bureau Mutual Insurance Company of Idaho*, 112 Idaho 461, 732 P.2d 699 (Ct.App.1987); *Sewell v. Neilsen, Monroe, Inc.*, 109 Idaho 192, 706 P.2d 81 (Ct.App.1985); *Blackmon v. Zufelt*, 108 Idaho 469, 700 P.2d 91 (Ct.App.1985). Here, no demand for jury trial was asserted pursuant to I.R.C.P. 38(b). Therefore, the district court was free to draw inferences it deemed most probable in conformity with the evidence presented. *Anderson, supra.* On appeal our review of a summary judgment is subject to the same standards that governed the trial court's consideration of the motion. *Mitchell*, 99 Idaho at 398, 582 P.2d at 1076.

## III. ANALYSIS

### A. CHARACTERIZATION OF CONTRACT AS OPTION

As noted above, the district court viewed the contract in question as an option agreement. On appeal, the Stoltenbergs strenuously argue that there is a genuine factual issue as to whether the contract is an option agreement, as characterized by the district court, or is instead merely a sale contract with an extended period for closing. Although this argument draws some support from the terms of the written contract, which contains no option language, we conclude that the Stoltenbergs are foreclosed from asserting that the agreement was not an option, for this argument was not presented to the district court. In fact, the Stoltenbergs conceded that the contract was an option at several stages of this litigation. Their answer to the complaint alleged that the contract was "in the nature of an option to purchase," and the affidavit of Pat Stoltenberg as well as the Stoltenbergs' brief filed in opposition to the summary judgment motion referred to the contract as an option. Because the Sutheimers asserted the contract to be an option agreement throughout their brief to the district court, the Stoltenbergs were on notice that the Sutheimers' motion for summary judgment was based upon this characterization. The Stoltenbergs did nothing in the district court proceedings to con-

---

**2.** The defendants South Fork and the Lodge have presented no defenses independent of those asserted by the Stoltenbergs to resist the contract claim. They apparently concede that if the Sutheimer contract is enforceable as against the Stoltenbergs, then the Sutheimers' interest in the property is superior to that of South Fork or the Lodge.

trovert this factual assertion that the contract was intended to be an option and, indeed, indicated their agreement with it. Even on appeal, the Stoltenbergs did not identify this as a factual issue until they filed their reply brief. Because no factual issue was raised below regarding whether the parties intended an option or a sale contract, and both parties' presentations to the district court acknowledged it to be an option, the Stoltenbergs' assertion of this alleged factual issue comes too late. We will not entertain issues raised for the first time on appeal. *In re Estate of Reinwald,* 122 Idaho 401, 402, 834 P.2d 1317, 1318 (1992); *Sun Valley Shopping Center v. Idaho Power Co.,* 119 Idaho 87, 93, 803 P.2d 993, 999 (1991).

## B. IMPOSSIBILITY

The Stoltenbergs next contend that their obligation under the contract with the Sutheimers was excused by application of the doctrine of impossibility of performance. They assert that FmHA's disapproval of the Sutheimer option in June 1991 made it impossible for the Stoltenbergs to convey the premises and thereby discharged any contractual duty to convey.

In *Haessly v. Safeco Title Insurance Co.,* 121 Idaho 463, 465, 825 P.2d 1119, 1121 (1992), the Idaho Supreme Court stated that the doctrine of impossibility "operates to excuse performance when the bargained-for performance is no longer in existence or is no longer capable of being performed due to the unforeseen, supervening act of a third party." To establish impossibility: "(1) a contingency must occur; (2) performance must be impossible, not just more difficult or more expensive; and (3) the nonoccurrence of the contingency must be a basic assumption of the agreement." *Id.*

■ Impossibility that is only temporary will not act to discharge a contractual obligation if the contract can yet be performed after the impossibility ceases. *Culp v. Tri–County Tractor, Inc.,* 112 Idaho 894, 900, 736 P.2d 1348, 1354 (Ct.App.1987). This is explained in Section 269 of the RESTATEMENT (SECOND) OF CONTRACTS as follows:

Impracticability of performance or frustration of purpose that is only temporary suspends the obligor's duty to perform while the impracticability or frustration exists but does not discharge his duty or prevent it from arising unless his performance after the cessation of the impracticability or frustration would be materially more burdensome than had there been no impracticability or frustration.

*See also Twin Harbors Lumber Co. v. Carrico,* 92 Idaho 343, 348, 442 P.2d 753, 758 (1968) (Under the doctrine of impossibility, if the existence of a specific thing is essential for performance, a duty to perform is discharged if the thing "subsequently is not in existence *in time for seasonable performance.*" Emphasis added).

■ In applying these principles to the case before us, we must bear in mind the characteristics of an option agreement. An option contract is not in itself an absolute agreement to sell. When a seller, in return for valuable consideration, grants an option to purchase real property, the seller is essentially extending an offer that is irrevocable for the duration of the option. *Gard v. Thompson,* 21 Idaho 485, 491, 123 Pac. 497, 500 (1912); Arthur Linton Corbin, CORBIN ON CONTRACTS § 264 at 510 (1963) (hereinafter CORBIN). The optionee receives an opportunity for a limited time to purchase the property for a specified price. *Gard v. Thompson, supra;* *McGill v. Lester,* 108 Idaho 561, 567, 700 P.2d 964, 970 (Ct.App.1985) (Walters, C.J., dissenting). Until the option is exercised, the optionor has only one duty— not to revoke the offer during the life of the option. Thus, in giving the option involved here the Stoltenbergs presented an irrevocable offer to the Sutheimers with a two-year period during which the Sutheimers could accept.

If the optionee exercises the option within the specified time, and thereby accepts the offer for sale of the property, a bilateral contract of sale, binding upon both parties, is formed. *Id.;* CORBIN, *supra,* at 511. Although an optionee's right of acceptance cannot be terminated by an act of the optionor, it may be terminated by any event that would operate to discharge or excuse con-

tract performance. *Id.;* RESTATEMENT (SECOND) OF CONTRACTS § 37 & Comment (b) (1981).

▌ Our inquiry, therefore, is whether at the time FmHA disapproved the Sutheimer contract, that disapproval made performance impossible and thereby discharged the Stoltenbergs' duties under the option contract. We conclude that it did not.

Assuming the FmHA's refusal to approve a sale to the Sutheimers in June 1991 would have made conveyance of the property by the Stoltenbergs impossible or impracticable at that time, such impossibility could continue only for so long as FmHA retained some interest in or authority over the property. Therefore, the alleged impossibility was not permanent but was temporary and of indefinite duration. This alleged impossibility in fact ended in October 1991 when the FmHA relinquished its interest.

The Stoltenbergs, as optionors, had no duty to convey title unless and until the option was exercised, and until then, no bilateral sale contract existed. There was no attempt by the Sutheimers to exercise the option until August 1992, when FmHA no longer had any interest in the premises or any rights under the shared appreciation agreement. It is thus apparent that the alleged temporary impossibility had ceased before the Stoltenbergs' performance became due. Therefore, any temporary impossibility created by FmHA's position did not discharge the Stoltenbergs' duty to convey the property when the Sutheimers exercised the option after the alleged impossibility had ended.

We consequently conclude that the impossibility of performance defense did not preclude summary judgment for the Sutheimers on their claim for specific performance of the bilateral sale contract formed in August 1992 when the Sutheimers exercised their option to purchase the twenty-acre parcel.[3]

## C. IMPLIED CONDITION PRECEDENT

▌ The Stoltenbergs also assert that FmHA approval of their contract was an implied condition precedent to the Stoltenbergs' obligation under the contract, and that the nonoccurrence of this condition discharges them from liability. The Sutheimers respond by asserting that the Stoltenbergs may not assert this issue because they did not raise it before the district court.

Although an implied condition precedent analysis has some appeal, we must limit our review to those issues presented to the district court and upon which the parties presented evidence and argument below. *In re Estate of Reinwald,* 122 Idaho at 402, 834 P.2d at 1318; *Sun Valley Shopping Center v. Idaho Power Co.,* 119 Idaho at 93–94, 803 P.2d at 999–1000; *Kinsela v. State Department of Finance,* 117 Idaho 632, 790 P.2d 1388 (1990); *Bonaparte v. Neff,* 122 Idaho 714, 716, 838 P.2d 317, 319 (Ct.App.1992). The Stoltenbergs' answer to the complaint did not assert as a defense the nonoccurrence of an implied condition precedent, and their brief in opposition to summary judgment did not mention it. The Stoltenbergs contend that at the hearing on the motion they asserted this defense, but we find nothing in the transcript of that hearing that would have fairly notified the district court or the Sutheimers that the Stoltenbergs were asserting any legal doctrine other than the one they relied upon in their brief, impossibility of performance. Consequently, because the defense of failure of a contractual condition precedent was not raised below, it will not be considered by this Court.

---

**3.** The Sutheimers also argue that the FmHA encumbrance did not constitute an impossibility that would excuse the Stoltenbergs' performance because discharge of a contractual obligation occurs only if "performance [is] impossible, not just more difficult or more expensive." *Haessly v. Safeco Title Insurance Co.,* 121 Idaho at 465, 825 P.2d at 1121. They point out that the Stoltenbergs had the alternative of paying FmHA the difference between the Sutheimers' contract price and the price FmHA required in order to release its mortgage. In light of our conclusion that any impossibility was extinguished before the Stoltenbergs' obligation to convey arose, we need not reach this alternative argument. However, our opinion should not be viewed as implying that the existence of an encumbrance on the title to real property will excuse a seller's breach of an unqualified contract to convey clear title.

## D. MUTUAL MISTAKE

Finally, the Stoltenbergs assert that summary judgment was improper because there exist genuine issues of material fact pertaining to their affirmative defense of mutual mistake. Again, however, we are precluded from considering this defense because it was not presented to the district court. Although their answer pleads this defense, the Stoltenbergs did not raise any issue of mutual mistake in opposition to the Sutheimers' summary judgment motion. We have often stated that a party resisting a motion for summary judgment may not rest upon the bare allegations of his or her pleadings. *State ex rel. Department of Labor and Industrial Services v. Hill,* 118 Idaho 278, 284, 796 P.2d 155, 161 (Ct.App.1990); *Barlow's, Inc., v. Bannock Cleaning Corp.,* 103 Idaho 310, 315, 647 P.2d 766, 771 (Ct.App. 1982). *See also* I.R.C.P. 56(e). We think it obvious that a trial court presented with a properly supported summary judgment motion and with a legal brief and evidence resisting the motion is expected and required to address only those legal theories asserted in support of and in opposition to the motion. The trial court is not obligated to also search the complaint, answer or other pleadings to determine whether other issues were raised therein that might have a bearing on the summary judgment proceedings. In sum, the trial court is not required to assert theories on behalf of the parties. In this case, the Stoltenbergs made no mention of a mutual mistake defense in their brief or oral argument to the district court in opposition to summary judgment. The district court therefore was never asked to address an alleged mutual mistake as a basis to refuse enforcement of the option contract, and for that reason we decline to consider it on appeal.

## E. CONCLUSION

We affirm the judgment granting specific performance of the contract between the Sutheimers and the Stoltenbergs and ordering that the Stoltenbergs, the Lodge and South Fork execute deeds conveying their interest in the twenty-acre parcel to the Sutheimers.

The Sutheimers have requested attorney fees on appeal pursuant to I.C. § 12–121. However, because we are not left with the abiding belief that the appeal was brought or pursued frivolously, we decline to award attorney fees. *See Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Costs on appeal to respondents.

WALTERS, C.J., and PERRY, J., concur.