953 P.2d 630

Homer FERGUSON, Plaintiff–
Respondent,

v.

CITY OF OROFINO, a municipal
corporation, State of Idaho,
Defendant–Appellant.

No. 23097.

Court of Appeals of Idaho.

Feb. 20, 1998.

James J. Davis, Thomas E. Dvorak, Boise, for defendant-appellant. Thomas E. Dvorak argued.

Harvey Richman, Coeur d'Alene, for plaintiff-respondent.

LANSING, Chief Judge.

This is an appeal from the district court's appellate decision reversing a magistrate's order for summary judgment in favor of the City of Orofino. The plaintiff, a former employee of the City, claims that the City breached the implied covenant of good faith and fair dealing by preventing his use of accrued personal leave time while he was an employee. He claims compensation for his unused leave. We conclude that genuine factual issues are presented which preclude summary judgment. Therefore, we affirm the decision of the district court and remand the case to the magistrate for further proceedings.

## I.  FACTS AND PROCEDURAL BACKGROUND

Homer Ferguson worked as a police officer with the Orofino City Police Department from March 1986 until his retirement in February 1995. During the last several years of Ferguson's employment, the City's personnel manual provided that employees would accrue personal leave time at rates ranging from two days per month to two-and-one-half days per month. The personal leave was to be used for both vacation and sick leave.[1] Sections 4(D) and 4(F) of the manual addressed the use of personal leave and the right to payment for unused leave upon resignation as follows:

D.  Personal leave may be accumulated up to a maximum of eight hundred eighty (880) hours. Personal leave will be granted at a time and in an amount which will least interfere with the work of the City, and when such leave has been requested reasonably in advance and approved by the immediate supervisor and the City Administrator. Unless waived by the City Administrator, no personal leave will be granted in excess of one hundred sixty (160) hours unless sick leave is involved.

. . . .

F.  When an employee separates from City services by reason of resignation with proper notice, or by dismissal s/he will be entitled to cash payment for unliquidated leave, not to exceed one (1) month's current salary. In the case of death, the beneficiary will be entitled to cash payment for unliquidated personal leave not to exceed one

---

1.  The manual required that employees maintain a personal leave reserve of at least 40 hours, which reserve could be used only for "sickness or other emergency."

(1) month's salary together with any other payments owed to the deceased employee.

At the time of his retirement, Ferguson had accumulated over 675 hours of unused personal leave time. However, the City paid him for only 160 of those hours upon his departure. The City based its position on the foregoing provisions of Section 4(F) of the personnel manual limiting reimbursement for unused leave upon an employee's separation from service, to an amount not exceeding one month's salary. Ferguson, however, maintained that notwithstanding that provision in the manual, he was entitled to compensation for the remaining 515 hours of unused leave time because he had been prevented from taking the leave during his employment. Ferguson brought this action in the magistrate division of the district court to recover for the 515 hours of unused leave.

The City moved for summary judgment, arguing that Ferguson's employment contract only entitled him to compensation for the 160 hours of unused leave for which he had already been paid. In response to the City's motion, Ferguson presented his own affidavit as well as the depositions of Ferris Childers, the chief of police from 1986 through 1994, and Michael Couts, the City's then current police chief. Ferguson's affidavit stated that the chief of police would not or could not allow Ferguson to use the personal leave to which he was entitled because, throughout the period of Ferguson's employment, the police department was seriously understaffed. Rather than being allowed to take leave, Ferguson testified, he was required to work extensive amounts of overtime. These statements were corroborated by the deposition testimony of Childers and Couts. Childers acknowledged that from October of 1990, when the subject leave policy was adopted, until Childers retired in 1994, Ferguson could not have taken "one more hour" of personal leave. Childers indicated that it would have been impossible to grant Ferguson time off because the police department was understaffed. He stated that the police force had been reduced from nine officers to eight, and that to be adequately staffed he would have needed to hire two more. Childers's testimony was echoed by Chief Couts, who stated that it would have been "extremely difficult to impossible" to have allowed Ferguson to take off any more of his personal leave hours while he was employed with the City. Childers stated that the police department was understaffed during the last year of Ferguson's employment. He indicated that the City was operating with only seven officers at that time.

The trial court granted the City's motion for summary judgment. Ferguson appealed to the district court, arguing that there were genuine issues of fact regarding whether the City had breached his employment contract and the implied covenant of good faith and fair dealing by preventing him from using the personal leave time to which he was entitled while employed with the police department. The district court reversed the summary judgment. On further appeal before this Court, the City maintains that summary judgment is appropriate because, under terms of the personnel manual, Ferguson was entitled to take personal leave only if and when it would not interfere with the City's work and his right to receive compensation for unused leave was limited to the amount he has already received.

## II. ANALYSIS

### A. Standard of Review

When reviewing an order granting summary judgment, an appellate court applies the same standard employed by the trial court in initially ruling on the motion. *Idaho Schools for Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 578, 850 P.2d 724, 729 (1993). That is, we review the record to determine whether there exists any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *See* I.R.C.P. 56(c); *Anderson v. City of Pocatello*, 112 Idaho 176, 179, 731 P.2d 171, 174 (1986); *Hirst v. St. Paul Fire & Marine Insurance Co.*, 106 Idaho 792, 795, 683 P.2d 440, 443 (Ct.App.1984). Every reasonable inference presented by the record must be drawn in favor of the party opposing the motion, *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994); *Idaho Schools, supra*, and if reasonable people could reach

different conclusions based on the evidence, the motion must be denied. *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994); *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 720, 791 P.2d 1285, 1299 (1990).

## B. Impossibility of Performance and Prevention of Performance

■ The City maintains that the magistrate properly granted summary judgment based upon Section 4(F) of the personnel manual, which provides that upon resignation, an employee's entitlement to payment for accrued leave will not exceed one month's salary. Ferguson acknowledges receiving a copy of this manual and does not dispute that its terms were contractual.[2] He also does not dispute that the compensation he received for 160 hours of unused leave is the equivalent of one month's salary.

■ Ferguson contends, however, that this section of the policy manual is not dispositive because the City prevented him from utilizing his leave time while he was employed as a police officer. Ferguson argues that as a consequence of this conduct by the City, the contract law doctrines of impossibility of performance and prevention of performance should be applied to nullify those portions of the employment contract dealing with the forfeiture of personal leave and limitations upon cash compensation for unused leave.

■ We are of the opinion that these doctrines are inapplicable to Ferguson's circumstance. In general terms, the doctrines of impossibility of performance and prevention of performance both operate to excuse a party *from performance of his or her obligations under the contract.* The doctrine of impossibility "excuse[s] performance when the bargained-for performance is no longer in existence or is no longer capable of being performed due to the unforeseen, superven-

ing act of a third party." *Haessly v. Safeco Title Ins. Co.,* 121 Idaho 463, 465, 825 P.2d 1119, 1121 (1992); *Sutheimer v. Stoltenberg,* 127 Idaho 81, 85, 896 P.2d 989, 993 (Ct.App. 1995). The doctrine of prevention of performance excuses a party from fulfilling his contractual obligations when the party to whom the obligation is owed unlawfully prevents the first party from tendering performance. *Sullivan v. Bullock,* 124 Idaho 738, 741–42, 864 P.2d 184, 187–188 (Ct.App.1993). *See also* JOHN D. CALAMARI & JOSEPH M. PERILLO, THE LAW OF CONTRACTS § 11–28 (3d ed.1987); WALTER H.E. JAEGER, WILLISTON ON CONTRACTS § 1316 (3d ed.1968). The party whose performance has been prevented may be entitled to damages for the benefit of the bargain that would have been earned through performance. *Sullivan,* 124 Idaho at 743–44, 864 P.2d at 189–90; CALAMARI, *supra.* Neither of these doctrines, however, can be applied in the manner suggested by Ferguson. In this case, Ferguson is not attempting to demonstrate that the City kept *him* from fulfilling *his obligations* under the employment contract. It is undisputed that Ferguson fully performed by providing services as a police officer. Rather, the substance of Ferguson's claim is that the City failed in its own performance by withholding from him benefits to which he was entitled. The law of impossibility of performance and prevention of performance has no apparent bearing upon the City's motion for summary judgment.[3]

## C. Implied Covenant of Good Faith and Fair Dealing

■ We turn now to Ferguson's argument that the evidence raises a genuine issue of material fact as to whether the City breached the implied covenant of good faith and fair dealing by frustrating his ability to use accrued personal leave while he was an employee.

2. It is well settled in Idaho law that terms of an employee handbook or personnel manual can constitute an element of the employment contract. *Harkness v. City of Burley,* 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986); *Johnson v. Allied Stores Corp.,* 106 Idaho 363, 679 P.2d 640 (1984).

3. Ferguson concedes in his respondent's brief that this "is not the classic case for application of the doctrines of prevention of performance and/or impossibility."

Under Idaho law, good faith and fair dealing are implied obligations of every employment contract. *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 669, 799 P.2d 70, 75 (1990); *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989); *Thompson v. City of Idaho Falls*, 126 Idaho 587, 593, 887 P.2d 1094, 1100 (Ct.App.1994). This implied covenant "protects the parties' benefits in their employment contract or relationship," and "any action which violates, nullifies or significantly impairs any benefit or right which either party has in the employment contract, whether express or implied, is a violation of the covenant." *Metcalf,* 116 Idaho at 627, 778 P.2d at 749. This implied covenant places a good faith obligation on each party to a contract to take reasonable measures to ensure that the other party obtains the benefits of the agreement. *George v. University of Idaho,* 121 Idaho 30, 37, 822 P.2d 549, 556 (Ct.App.1991). According to Ferguson, the City violated the implied covenant of good faith and fair dealing when it so understaffed its police department and imposed such an inordinate workload upon him that his use of leave time became impossible and his superiors would not authorize it. Ferguson asserts that the City thereby deprived him of the benefit of the generous personal leave promised in the policy manual.

The City, in response, relies upon the rule that the implied covenant does not impose any duty that is contrary to express terms of the contract. *See Leon v. Boise State University,* 125 Idaho 365, 369, 870 P.2d 1324, 1328 (1994); *First Security Bank of Idaho, N.A., v. Gaige,* 115 Idaho 172, 176, 765 P.2d 683, 687 (1988); *George,* 121 Idaho at 37, 822 P.2d at 556. The City points out that it retained discretion regarding the allowance of leave time. Section 4(D) of the policy manual states that personal leave "will be granted at a time and in an amount which will least interfere with the work of the City," thus expressly reserving to the City the right to exercise control over employee absences on personal leave. According to the City, this contractual term defeats Ferguson's claim that the City was obligated, under an implied covenant of good faith, to allow him to take more leave while employed by the City.

We conclude, however, that this discretionary authority contractually vested in the City does not entitle the City to summary judgment. The language of Section 4(D) gives the City discretion only to regulate the time at which leave may be used and the amount of leave which may be taken at a particular time so as to minimize inconvenience to the City; it does not give the City discretion to completely deny the use of personal leave that is promised elsewhere in the same manual. Further, as we stated in *George, supra,* the contracting party has a good faith obligation to take reasonable measures to ensure that the other party obtains the promised benefits of the contract. *George,* 121 Idaho at 37, 822 P.2d at 556. It would be a violation of this duty for the City to exercise its discretion in such a way as to eviscerate one of Ferguson's benefits of the employment agreement.

The Utah Court of Appeals decision in *Cook v. Zions First Nat'l Bank,* 919 P.2d 56 (Utah App.1996) is illustrative. In that case Cook accrued sick leave as a term of her employment with a bank. To use sick leave for scheduled medical procedures, employees were required to submit written requests to their supervisors for approval. Cook's department became very busy due to the bank's acquisition of another bank and its conversion to a new computer system. As a result of this unusual activity, Cook's department manager announced that she did not want employees taking time off for several months and that personnel would be required to work overtime. During this period, Cook was denied a request to take one day off so that she could have a lump surgically removed from her lip. Finally, several months after her first request, she was allowed a day off for surgery and, shortly thereafter, learned that the lump was an aggressive, malignant melanoma. Cook sued the bank for breach of contract and breach of the implied covenant of good faith and fair dealing concerning the use of sick leave. A summary judgment in favor of the bank was reversed by the Utah Court of Appeals. That court observed that the only condition upon Cook's exercise of her sick leave was that she request permission from her super-

visor. The court held that there existed a factual issue as to whether the bank violated the implied covenant of good faith and fair dealing by denying Cook permission to use her sick leave stating, "When one party to a contract retains power or sole discretion in an express contract, it must exercise that discretion reasonably and in good faith." *Cook*, 919 P.2d at 60. The Utah court held that the question whether the bank acted unreasonably, and thus violated its obligation of good faith, in exercising its power to authorize use of sick leave was a factual issue inappropriate for disposition on summary judgment.

We think the same result is called for here. Ferguson's evidence raises a factual issue as to whether the City breached the implied covenant of good faith and fair dealing by denying or impairing a benefit of his employment contract, the right to take time off as personal leave. That issue is for a jury to determine. The provision of Section 4(D) of the personnel manual, allowing the City to consider its own convenience in scheduling an employee's use of personal leave, is but one factor for consideration by the jury in determining whether the City acted in good faith.

■ The City next directs our attention to Section 4(F) of the policy manual which specifies that upon separation from City service, an employee's entitlement to cash payment for unliquidated leave is limited to an amount not exceeding one month's current salary. Since Ferguson was paid for 160 hours of unliquidated leave, the equivalent of one month's salary, the City maintains that he has received all payment to which he was entitled and is now attempting to employ the implied covenant of good faith to impose obligations contrary to this express term of Section 4(F).

The City's argument again misses the mark. The provisions of Section 4(F) are not inconsistent with Ferguson's claim that he is entitled to damages for breach of the City's implied obligation not to nullify or hinder his enjoyment of benefits promised elsewhere in the policy manual. Section 4(F) gives to separating employees a contract right to payment for unused leave and also limits that entitlement to 160 hours. However, Ferguson does not allege that he was promised payment for more than 160 hours of accrued leave when he retired; rather, he alleges that he had a contract right to use the leave by taking time off while he was still an employee. He seeks compensation for alleged breaches of the covenant of good faith that occurred over the course of his employment.[4] If, during Ferguson's employment, the City fully met its contractual obligation to allow him to use personal leave, then by terms of Section 4(F), Ferguson would not be entitled to payment of more than one month's salary for unused leave upon retirement, even though a greater amount may have remained unused. That does not mean, however, that if the City did breach the implied covenant of good faith by unreasonably preventing Ferguson's enjoyment of personal leave during the course of his employment, he is without a remedy for such a breach. In other words, the language of Section 4(F) defines an employee's entitlement when the employee terminates; it does not state a limit on damages for an earlier breach of the City's implied obligation to reasonably facilitate the employee's receipt of promised contract benefits.

Authorities cited by the City are inapposite. Numerous cases, including *Lim v. Motor Supply, Ltd.*, 45 Haw. 111, 364 P.2d 38 (1961); *Mid America Aerospace, Inc., v. Dept. of Human Resources*, 10 Kan.App.2d 144, 694 P.2d 1321 (1985); *New Mexico State Labor and Industrial Comm'n v. Deming Nat'l Bank*, 96 N.M. 673, 634 P.2d 695 (1981); and *Phillips v. Memphis Furniture Mfg. Co.*, 573 S.W.2d 493 (Tenn.App.1978), hold that an

---

4. Ferguson has also argued on appeal that there is an ambiguity in Section 4(F) of the personnel manual which precludes summary judgement. He argues that the provision limiting cash payment for unused leave to the equivalent of one month's salary upon an employee's "resignation" or "dismissal" is ambiguous as to whether it applies to a termination by retirement. We will

not address this argument, however, because Ferguson raises it for the first time on appeal. *See Viveros v. State Dep't of Health and Welfare*, 126 Idaho 714, 716, 889 P.2d 1104, 1106 (1995); *State v. Doe*, 123 Idaho 370, 371, 848 P.2d 428, 429 (1993); *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

employee is not entitled, following discharge from employment, to be paid for unused vacation leave absent an express agreement for such compensation for unused leave. However, in none of those cases did the employee allege that the employer had prevented the employee's use of leave during the employment relationship. Therefore, they do not address the issue presented here.

Our decision should not be understood as broadly holding that employees of the City must be paid for all accumulated personal leave at the time of their separation. Under the policy manual, City employees are plainly limited to the equivalent of one month's salary for unused leave unless they can show that the City nullified or significantly impaired their ability to use leave during their employment. In this case, Ferguson bears the burden to prove that the City nullified or significantly impaired his right to take personal leave and that the City's actions were not merely a reasonable, good faith exercise of its right to control the scheduling and duration of leave time as contemplated under Section 4(D) of the personnel manual. If he meets this burden, he will be entitled to compensation only for so much of the accrued leave as he proves would have been used but for the City's breach of its implied obligation of good faith and fair dealing; he may not be compensated for unused leave that was voluntarily foregone, whether from a sense of personal responsibility or from enjoyment of his work or for other reasons.

### D. Attorney Fees

Ferguson requests an award of attorney fees on appeal pursuant to I.C. § 12–121 and Idaho Appellate Rule 11.1. Attorney fees are recoverable under I.C. § 12–121 only if the position taken by the non-prevailing party was frivolous, unreasonable or without foundation. I.R.C.P. 54(e)(1); *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979); *Ada County Highway District v. Smith*, 113 Idaho 878, 881, 749 P.2d 497, 500 (Ct.App.1988). The City's appeal was not brought frivolously or unreasonably, and Ferguson has demonstrated no basis for an award of sanctions pursu-

ant to I.A.R. 11.1. Therefore, the request for attorney fees is denied.

### III. CONCLUSION

For the reasons set forth above, we affirm the district court's appellate decision reversing the summary judgment, and we remand this case to the magistrate division of the district court for further proceedings consistent with our decision.

Costs to respondent Ferguson.

PERRY, J., and WALTERS, Acting J., concur.