160 P.3d 743

**CRISTO VIENE PENTECOSTAL CHURCH, an unincorporated association, and Jose N. Pastor, Plaintiffs–Appellants,**

v.

**Jesus A. PAZ, Defendant–Respondent.**

No. 32280.

Supreme Court of Idaho,
Boise, May 2007 Term.

May 24, 2007.

Gigray, Miller & Downen, Caldwell, Idaho, for appellant. William F. Gigray, Jr. argued.

Hamilton, Michaelson & Hilty, LLP, Nampa, Idaho, for respondent. Mark Hilty argued.

JONES, Justice.

Appellants, Cristo Viene Pentecostal Church and Jose Pastor (collectively, the plaintiffs), sued Respondent, Jesus Paz, for breach of contract, alleging that he wrongfully denied them their contractual right to purchase certain real property located in Caldwell, Idaho. Paz moved for summary judgment, arguing that the contract executed by the parties constituted a lease agreement with an option to purchase and that the plaintiffs had failed to exercise the option. The district court granted Paz' motion for summary judgment and quieted title to the property in his name. We affirm.

## I.

Cristo Viene Pentecostal Church is a place of worship in Caldwell, ministered by Pastor. The Church holds its services in a building located at 220 North 6th Avenue ("subject property"), the right to ownership of which is at dispute in this case. The plaintiffs initially rented space in the building from Darigold, Inc., which previously owned the subject property. However, in the winter of 2000, Darigold offered to sell the subject property to the plaintiffs for $52,500. When the plaintiffs could not secure sufficient funding to finance the purchase, Paz, who was loosely affiliated with the church, approached Pastor with a solution.

At the time, Paz was in the process of selling certain commercial properties to the City of Caldwell. He proposed using the proceeds of the sales to purchase the subject property with the intent of reselling it to the Church at the same price. A conversation between the two ensued whereby Pastor orally agreed that the Church would put $5,000 down on the property, with the balance of the purchase price to bear 9.5 percent interest and be paid in monthly installments of $550. The Church paid $2,500 on April 27, 2000, and Paz proceeded to purchase the subject property on May 18, 2000.

The parties did not execute a written agreement regarding the subject property until June 22, 2000, when they signed a contract furnished by Paz. The written contract differed from the parties' prior oral agreement in that it did not provide for a down payment. Additionally, the contract stated it was a lease with an option to purchase; however, Pastor, who could not read or write English, signed with the belief that it was a simple sale contract in accordance with the terms of their oral agreement. The contract provided that should the Church wish to exercise its option to purchase the subject property, it must do so between May 18, 2001 and May 28, 2001 by: (1) paying an additional $550; (2) entering into a long term purchase agreement with Paz; and (3) utilizing Alliance Title of Caldwell as the closing agency. The plaintiffs began making what they believed to be monthly purchase payments of $550 on July 1, 2000. Paz contends the payments were rent payments under the terms of the lease. The plaintiffs subsequently presented Paz with a second payment of $2,500 on July 5, 2000. Then, in May or June of 2001, the plaintiffs allege Paz

informed Pastor that state regulations prohibited him from selling the subject property until two years had lapsed from when he sold the commercial property to the City of Caldwell.

In the spring of 2003, the Church came up with sufficient funding to pay off the remaining balance of the purchase price and Pastor approached Paz to acquire title to the subject property. At that time, Paz informed him that the Church had not exercised its option to purchase the property pursuant to the terms of the contract. Paz did, however, indicate that he would be willing to sell the subject property to the Church for $70,000. He further stated that he would credit against the new asking price the $5,000 payment made by the plaintiffs, $1,294 the plaintiffs paid to keep the building insured, $1,837.49 they paid in property taxes, and $108.81 they paid for irrigation assessments, bringing the requested purchase price down to $61,759.70.[1]

The plaintiffs sued for breach of contract, claiming they had a contractual right to purchase the subject property for $52,500. Paz denied the plaintiffs' claim, and filed a counterclaim seeking a quiet title judgment. Paz then filed a motion for summary judgment, arguing that the contract executed by the parties constituted a lease agreement with an option to purchase and that the plaintiffs had failed to exercise the option. Although the district court found that the contract unambiguously constituted a lease agreement with an option to purchase, it initially denied Paz' motion on the ground that a material factual dispute might exist concerning the statement allegedly made by Paz in May or June of 2001, regarding his ability to sell the property. On reconsideration, the district court found that Paz' alleged statement was immaterial and granted his motion for summary judgment, holding that the plaintiffs never exercised their contractual option to purchase. The district court subsequently quieted title to the property in Paz' name. The plaintiffs appeal.

## II.

The following issues will be addressed in this opinion: (1) whether the district court erred in finding that the parties' written contract was a lease with an option to purchase and subsequently granting Paz' motion for summary judgment, and (2) whether either party is entitled to attorney fees or costs on appeal.

### A.

When reviewing a summary judgment order, this Court applies the same standard as the district court. *Foster v. Traul*, 141 Idaho 890, 892, 120 P.3d 278, 280 (2005). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Infanger v. City of Salmon*, 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002). This Court will construe all disputed facts liberally in favor of the non-moving party, and all reasonable inferences will be drawn in favor of the non-moving party. *Hayward v. Jack's Pharmacy Inc.*, 141 Idaho 622, 625, 115 P.3d 713, 716 (2005). If the facts are such that reasonable persons could reach differing results, summary judgment is improper. *Id.*

### B.

At dispute in this case is whether the plaintiffs have an ownership right in the subject property pursuant to the parties' written contract. Paz argues, and the district court found, that the parties' contract constituted a lease agreement with an option to purchase and that the plaintiffs failed to exercise the option. The plaintiffs maintain that the contract constituted a contract for sale of the subject property, which Paz breached by failing to transfer title when presented with the purchase price. In the alternative, they ar-

---

1. Plaintiffs did not seek to recover the taxes and assessments they paid, which appear to be the responsibility of Paz under the contract, nor do they seek to recover for certain improvements they made to the building.

gue that even if the Court finds the contract to be a lease agreement with an option to purchase, they exercised the option by paying Paz $2,500 on July 5, 2000. Finally, the plaintiffs argue that the doctrine of quasi-estoppel precludes summary judgment in this case.

#### i.

 As an initial matter, this Court must determine the legal effect of the parties' written contract. "The interpretation of a contract begins with the language of the contract itself." *Independence Lead Mines Co. v. Hecla Mining Co.*, 143 Idaho 22, 26, 137 P.3d 409, 413 (2006). If the language of the contract is unambiguous, then its meaning and legal effect must be determined from its words. *Shawver v. Huckleberry Estates, LLC*, 140 Idaho 354, 361, 93 P.3d 685, 692 (2004). "A contract is ambiguous if it is reasonably subject to conflicting interpretations." *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185, 75 P.3d 743, 746 (2003). Determining whether a contract is ambiguous is a question of law over which this Court exercises free review. *Id.*

The express terms of the parties' contract unambiguously provided that it was a lease agreement with an option to purchase. Paragraph five of the contract, which delineated the pricing terms, stated that the total purchase price of the subject property was to be $52,500 with nothing down, and that the "[b]alance of the purchase price to be paid as follows: LEASE WITH AN OPTION TO PURCHASE AT $52,500." Paragraph eight provided additional terms and conditions, it stated in relevant part:

> THE TENANTS ARE TO HAVE POSSESSION OF THE PROPERTY AND LEASE AT $550.00 A MONTH. LEASE PAYMENTS ARE TO BE PAID AT THE BEGINNING OF EACH MONTH.

> THE TENANT IS TO EXERCISE THE PURCHASE OPTION BETWEEN MAY 18TH 2001 AND MAY 28TH 2001 BY PAYING $550.00 AND ENTERING INTO THE LONG TERM PURCHASE AGREEMENTS.

> THE CLOSING AGENCY IS TO BE ALLIANCE TITLE OF CALDWELL, ID. THE TENANTS ARE TO PAY FOR ALL MAINTENANCE, UPKEEP, UTILITIES AND PROVIDE THEIR OWN INSURANCE.

The language of the contract indicates it is not an absolute agreement to sell, as suggested by the plaintiffs. Rather, the language grants the plaintiffs an option to purchase the property at a specified time for the specified price of $52,500. A reading of the contract's plain language establishes that the parties executed a lease agreement with an option to purchase.

The plaintiffs contend that Pastor believed he was signing a simple sale contract in accordance with the parties' prior oral agreement and intended to purchase, not lease, the subject property. Pastor's subjective belief is inconsistent with the plain language of the contract. The parties do not dispute that Pastor did not review the terms of the contract at the time of signing due to his inability to read English. Pastor's erroneous belief that he was signing a sale contract will not excuse his failure to read the contract's terms prior to signing, nor will it allow him to avoid the contract's terms on the ground that he did not understand them.[2] *Constantine v. McDonald*, 25 Idaho 342, 344, 137 P. 531, 531 (1913) (a person who cannot read the language in which a contract is written has a duty to procure someone to read and explain it to him before signing).

Further, the plaintiffs' contention that the parties' written contract was merely a reproduction of the parties' previous oral agreement and should be enforced as such is misplaced. Paragraph 22 of the contract contained a merger clause, the purpose of which is to establish that the writing constituted the parties' entire agreement and superseded all prior informal understandings. *Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005). Any informal oral agreement the parties may have reached re-

---

**2.** Plaintiffs did not allege that Paz fraudulently induced Pastor to sign the contract by affirmatively misrepresenting its contents.

garding the subject property was superseded by the written agreement and cannot now be relied upon to alter or change its plain language.

Last, the plaintiffs argue that the document's heading "Commercial/Investment Real Estate Purchase and Sale Agreement" indicates that the agreement was a contract for sale. When interpreting contractual provisions, the agreement must be viewed as a whole to determine the parties' intent. *Lickley v. Max Herbold, Inc.*, 133 Idaho 209, 211, 984 P.2d 697, 699 (1999). If, after viewing the contract in its entirety, it appears that pre-printed portions of the form conflict with written portions, "the written parts control the printed parts, and the parts which are purely original control those which are copied from a form, and if the two are absolutely repugnant, the latter must be so far disregarded." I.C. § 29–109. In this case, the written contractual provisions establish it was a lease agreement with an option to purchase.

In sum, though Pastor may have thought he was signing a sale contract, the plain language established that it was a lease agreement with an option to purchase. "Courts do not possess the roving power to rewrite contracts in order to make them more equitable." *Shawver*, 140 Idaho at 362, 93 P.3d at 693. The district court did not err in holding that the parties' written contract was a lease agreement with an option to purchase.

### ii.

Similarly, the district court did not err in finding that Paz did not breach the contract. "A breach of contract occurs when there is a failure to perform a contractual duty." *Shawver*, 140 Idaho at 361, 93 P.3d at 692. The plaintiffs contend that Paz had a contractual obligation to convey the subject property when Pastor approached him in 2003 with the balance of the purchase price. This argument is inconsistent with the contract's terms, which established that the Church was merely a lessee upon signing. Paz did not have an obligation to sell the property pursuant to the contract until the plaintiffs exercised the option in the manner prescribed in the parties' contract. *See Sutheimer v. Stoltenberg*, 127 Idaho 81, 86, 896 P.2d 989, 994 (Ct.App.1995) (optionors have no duty to convey title unless and until the option is exercised, "until then, no bilateral sale contract exist[s]"). By failing to exercise the option within the specified time period the plaintiffs allowed the option to expire, thereby relieving Paz of any potential contractual duty to sell the property.

The plaintiffs argue that even if this Court interprets the contract to embody a lease with an option to purchase, they exercised the option by making a $2,500 payment on July 5, 2000. The plaintiffs' position—that the $2,500 dollars they put down exercised the option to purchase the property—is likewise contrary to the terms of the contract. Assuming that a portion of the $2,500 payment could be attributed to the $550 that was to be paid between May 18, 2001 and May 28, 2001, it is still undisputed that the plaintiffs did not execute any long-term purchase agreements as required by the contract, nor did they close the purchase through Alliance Title per the contract's terms.

Last, the plaintiffs allege that in May or June of 2001, Paz informed Pastor that state regulations prohibited him from selling the subject property until two years had lapsed from the time he sold his commercial property to the City of Caldwell. The plaintiffs do not state what they allege the legal effect of Paz' statement was. Paz' statement did not become a part of, alter, or modify the contract as there was no meeting of the minds between the parties that such would be the case. *See Barry v. Pacific West Const., Inc.*, 140 Idaho 827, 831, 103 P.3d 440, 444 (2004). The plaintiffs do not allege mistake in their pleadings, nor do they seek any relief in the form of reformation. Furthermore there is no indication (1) that the plaintiffs tried to exercise their option at the time provided in the agreement or at any time within the next year, or (2) that Paz ever withdrew the option, or took any action precluding the plaintiffs from exercising the option during the time prescribed. Therefore, the district court correctly held that

Paz' alleged statement was immaterial and did not preclude summary judgment.

### iii.

■ On appeal, the plaintiffs argue for the first time that the district court erred in granting summary judgment because it did not consider the doctrine of quasi-estoppel. An issue raised for the first time on appeal will not be considered by this Court. *McPheters v. Maile,* 138 Idaho 391, 397, 64 P.3d 317, 323 (2003).

### C.

■ Paz seeks attorney fees under Idaho Code § 12–121, alleging that the action was brought frivolously. Paz is not entitled to an award because the plaintiffs did not act frivolously or unreasonably in this matter.

■ Paz additionally seeks attorney fees under Idaho Code § 12–120(3), which provides that the prevailing party shall recover attorney fees in a civil action to recover on a contract relating to the purchase or sale of goods or services and in any commercial transaction.[3] Paz does not seek attorney fees on the basis that the case involved a commercial transaction. Rather, Paz characterizes the case as a contract action. However, the contract branch of Idaho Code § 12–120(3) pertains only to contracts for the purchase or sale of goods, wares, merchandise, or services. By its own terms, it does not apply to contracts for the rental or purchase of real property. Because Paz merely cites to Idaho Code § 12–120(3) and does not provide any argument justifying an award under that section, his request is denied. *Craig Johnson Const., LLC v. Floyd Town Architects, P.A.,* 142 Idaho 797, 803, 134 P.3d 648, 654 (2006).

### III.

The district court is affirmed. The parties' written contract unambiguously constituted a

lease agreement with an option to purchase. The plaintiffs failed to exercise the purchase option per the contract's terms. Therefore, Paz had no contractual obligation to sell the property to the plaintiffs and did not breach the contract by failing to do so. Costs, but not attorney fees, are awarded to Paz.

Justices TROUT and BURDICK concur.

Justice EISMANN, concurring in the result in part and dissenting in part.

I concur in the result in Parts II.A and B. I do so not because I disagree with the reasoning, but because the issues addressed were not properly raised on appeal. I agree that Respondent did not properly request attorney fees under Idaho Code § 12–120(3) because he did not contend that this was a commercial transaction. However, because I believe he is entitled to an award of attorney fees under Idaho Code § 12–121, I respectfully dissent as to that portion of Part II.C.

Attorney fees on appeal are awardable under Idaho Code § 12–121 if the appeal was brought frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves,* 138 Idaho 64, 57 P.3d 775 (2002). The appeal in this case certainly qualifies.

We have consistently held that issues on appeal must be raised in the opening brief. *Rowley v. Fuhrman,* 133 Idaho 105, 982 P.2d 940 (1999). "In order to be considered by this Court, the appellant is required to identify legal issues and provide authorities supporting the arguments in the opening brief. A reviewing court looks to the initial brief on appeal for the issues presented on appeal." *Myers v. Workmen's Auto Ins. Co.,* 140 Idaho 495, 508, 95 P.3d 977, 990 (2004) (citations omitted). This Court will not address an issue raised only in the reply brief. *Hogg v. Wolske,* 142 Idaho 549, 130 P.3d 1087 (2006); *Suitts v. Nix,* 141 Idaho 706, 117 P.3d 120 (2005); *Hernandez v. State,* 127 Idaho 685, 905 P.2d 86 (1995); *State v. Killinger,* 126

---

**3.** Of interest is the fact that Paz was awarded attorney fees below. In its written decision on the matter, the district court recited that "[t]he parties are in agreement that the defendant is the prevailing party and entitled to recover reasonable attorneys based on I.C. § 12–120(3) and under the terms of the agreement between the

parties." There is nothing in the record to indicate whether the award under § 12–120(3) was based on the contract provision or the commercial transaction provision. On appeal, however, Paz does not assert a right to fees under either the agreement between the parties or under the commercial transaction provision.

Idaho 737, 890 P.2d 323 (1995); *State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993).

In their opening brief, the Appellants did not list any issues on appeal. They did not dispute that the contract they signed was a lease with an option to purchase. In fact, that is what they repeatedly stated it was.[1] They presented argument on only two issues: (1) the district court should have considered the doctrine of quasi-estoppel and (2) the district court should have found that the Appellants exercised their option to purchase the property. The first issue was not raised in the trial court, and therefore the majority rightfully did not address it on appeal. Interestingly, that is the only issue on which the Appellants provided any authority in their briefing.

With respect to the second issue, the Appellants entire argument in their opening brief was as follows:

Further under the facts, the court should have found with respect to the lease/option which respondent had appellant Pastor sign, that the appellants had exercised the option to purchase, the respondent having received $5,000 on the transaction for which he never gave any credit in writing, or orally informed the appellants that was consideration for his having leased the Darigold property to appellants with the option to purchase. (Opening brief, pp. 17–18)

In arguing that the district court should have found that they had exercised the option to purchase, the Appellants did not even address the contractual requirements for doing so. The contract states, "The tenant is to exercise the purchase option between May 18th 2001 and May 28th 2001 by paying $550.00 and entering into the long term purchase agreements." The Appellants totally ignored the additional requirement that they enter into a long-term purchase agreement. The agreement also states, "The closing agency is to be Alliance Title of Caldwell, *Id.*" The Appellants also ignore the fact that there was no closing.

In their reply brief, the Appellants responded to Respondent's argument that they had not exercised their option to purchase. In doing so, they simply reiterated that they had paid the $550. They did not address the other requirement that they also execute a long-term purchase agreement, nor did they mention the lack of any closing. Their entire argument was as follows:

Was the option exercised? It is Appellants' contention that it was. By the terms of the option to exercise it, the payment of $550.00 was to have been made between May 18, 2001 and May 28, 2001. Actually, the $550.009 had already been paid. The payment was acknowledged when the agreement was executed. Reference is

---

1. For example, they stated:
 Respondent did not tell appellant Pastor that the agreement was a lease/option and not an agreement selling the property with a down payment and monthly installments as stated before. (Opening brief, p. 5)
 An examination of the agreement shows appellants were to have exercised the option by making an additional payment of $550 between May 18, 2001 and May 28, 2001. (Opening brief, p. 7)
 The discovery by the appellants that the agreement signed by appellant Pastor was not an agreement for sale and purchase, but a lease/option, did not occur until appellants had arranged to pay the balance of the purchase price owed respondent. (Opening brief, p. 12)
 It appears the reason respondent, instead of having prepared an agreement for purchase and sale, had the agreement of lease and option prepared because he wanted to defer the income taxes he would have to pay by reason of his sale of property to the City of Caldwell.

Under the provisions of the Internal Revenue Code relating to the exchange of properties, and the income tax advantages for respondent, he knew he could not immediately sell the property to the church, which he thought was for one year, and which he provided in the lease/option agreement he had appellant Pastor sign. (Opening brief, p. 13)
In this case respondent to the disadvantage of appellants by making the agreement between the parties a lease/option was inconsistent with the position he had taken that he was purchasing the Darigold property and selling it to appellant church. (Opening brief, p. 16)
In this case, the respondent reaped an unconscionable advantage and appellants suffered an unconscionable disadvantage by respondent's changing his position from selling to the appellant church the Darigold property and having appellant Pastor sign a lease with an option to purchase. (Opening brief, p. 17)

**312**

made to paragraph 6—"EARNEST MONEY". As much as the receipt of July 5, 2000 acknowledges the payment of $2,500.00 on the building, why was such payment required of Appellants if it did not apply to the purchase of the building and, certainly, many times over exceeded the $550.00 payment to exercise the option in 2001.

It was only in their reply brief that the Appellants made a half-hearted effort to argue that the agreement may be ambiguous, and they did so only in response to the Respondent's argument that it was unambiguous. The Appellants admit, "This Real Estate Purchase and Sale Agreement form was converted into a lease option by a realtor employed by Mr. Paz." (Reply brief, p. 4) They then argued that the document's heading, without reading its contents, could cause one to believe it was a purchase contract. "The agreement of June 22, 2000 upon examination **without study** gives the impression that it was a 'Commercial/Investment Real Estate Purchase and Sale Agreement', as it is identified and not a lease." (Reply brief, p. 5; emphasis added) Even then, the Appellants admitted it was a lease. They continued, "Mr. Paz could have explained to Mr. Pastor that it was not a purchase and sale agreement as it appeared, but a lease with an option to purchase." (Reply brief, p. 5)

The only issue properly raised by Appellants on appeal was whether they had exercised their option to purchase. In arguing that issue, they do not even address the contractual requirements for doing so. In my opinion, this appeal was brought and pursued frivolously, unreasonably, and without foundation.

Chief Justice SCHROEDER concurs.