367 P.2d 568

James A. PRUDENTE and Charlotte Prudente, Plaintiffs-Respondents,

v.

Theodore NECHANICKY, also known as Ted Nechanicky, and Clara Nechanicky, his wife, Defendants-Appellants,

P. Nelson and Jane Doe Nelson, his wife, whose true Christian name is not known, and any unknown heirs, devisees, legatees, successors or assigns of said J. P. Nelson and Jane Doe Nelson; Loren E. Forsberg and Jane Doe Forsberg, his wife, whose true Christian name is not known, and any unknown persons claiming or to claim as heirs, devisees, legatees, successors or assigns of said persons; Theodore Nechanicky, also known as Ted Nechanicky, and Clara Nechanicky, his wife, and all of the unknown heirs, assigns, and devisees of each and all of the above-named individuals, and all persons claiming or to claim under said persons, and all persons interested or claiming any right, title, interest, lien or estate in and to the following described real property, situate in Benewah County, Idaho: Lots Twenty (20), Twenty-one (21), Twenty-two (22), Twenty-three (23), Twenty-four (24) and Twenty-five (25), Central Addition to the City of St. Maries, Benewah County, Idaho, or claiming any equity or interest or title in any portion of said property or buildings situate thereon, Other Defendants.

No. 8997.

Supreme Court of Idaho.

Dec. 28, 1961.

Wm. D. Keeton, Boise, for appellants.

Richard L. McFadden, St. Maries, for respondents.

SMITH, Chief Justice.

The record variously designates a certain structure as a boathouse, floathouse or houseboat. Except where otherwise indicated we shall refer to it as a houseboat.

Respondents brought this action to quiet title to Lots 20 to 25, inclusive, in Central Addition to the City of St. Maries, alleging that they hold title thereto by virtue of a Benewah County tax deed executed and delivered April 20, 1959, but that appellants claim an interest in a certain "boathouse" or "floathouse" purchased by respondents, assessed or taxed as real property, situate on and appurtenant to Lot 20.

Appellants by their answer disclaimed any interest in the described lots, but claim the houseboat, alleging that it was located partly on Lot 20 and partly on the adjacent Lot 19; they denied that the structure is appurtenant to the real property, alleging that it is personal property, and that respondents secured no title thereto by their tax deed.

Appellants then affirmatively alleged that in 1958 they purchased the houseboat, in a dilapidated condition, tipped over on Lot 19, and that the owner of that lot permitted placement of the structure thereon; that they repaired and improved it to a value in excess of $1200; also that it is

placed on logs and so constructed that it floats on water. Appellants offered to do equity by payment of reasonable rental for any time the structure may have occupied a portion of Lot 20.

Appellants, by supplemental answer, alleged that during the spring of 1960, due to the high waters of the adjacent St. Joe River, the houseboat floated off and away from, and no longer was located on any part of respondents' land.

The trial court, sitting without a jury, found in favor of respondents and entered judgment and decree quieting title in them to the described lots and to the houseboat. Thereafter, appellants appealed from the judgment and decree and from an order denying their motion for a new trial.

The record shows that March 14, 1941, Oscar Oquist, then owner, quitclaimed the described Lots 20 to 25, inclusive, "together with the boathouse" situate thereon to Isaie Lahaye who, May 5, 1941, quitclaimed said described properties to Marguerite Nelson; that Marguerite Nelson and Sam Nelson, September 10, 1952, quitclaimed the same to Loren E. Forsberg. Next, by County Treasurer's tax deed, dated January 16, 1957, for the consideration of $9.58 delinquent taxes, Benewah County took title to the described lots "and Houseboat." Benewah County, April 20, 1959, by tax deed conveyed to respondents the described lots for a total consideration of $150, but made no mention in such deed of a floathouse, boathouse, or houseboat; nor did the county theretofore advertise that any such structure was to be sold by the county at the tax sale.

The testimony shows that sometime after 1952 Mr. and Mrs. Forsberg transferred the land and the houseboat to Carl M. Buell, who was performing legal work for Forsberg. This transaction also was by quitclaim deed which Mr. Buell lost or misplaced. He remembered that previously he had prepared quitclaim deeds for the land but always had set out the houseboat separately, in addition to the legal description of the lots of land.

In 1958, Mr. Buell sold the houseboat to Clara Nechanicky, one of the appellants. This transaction is evidenced by Mrs. Nechanicky's bank check to Buell, dated January 14, 1958, for $20; which cleared the bank the next day; on the face of the check is written "Pay't in full boathouse."

Buell didn't think the houseboat was worth any more than $20 because of its deplorable condition. One witness, acquainted with the houseboat at that time, stated it was worthless except for the logs upon which it floated. Appellants after acquiring the houseboat rebuilt it and thereby enhanced its value to $1400.

The trial court found that in January 1958 the houseboat was tipped over and laying on its side on the described Lots 17, 18 or

19, adjacent to Lot 20, it having been removed from Lot 20 by the waters of St. Joe River. That appellants purchased the houseboat from Carl M. Buell, paying $20 therefor although Buell did not have good title thereto; that appellants righted the houseboat, substantially repaired and improved it, and moored it at a place on, designated by and with the permission of the owner of Lot 19. That such structure is placed on logs, and floats during times of sufficient depths of the waters of St. Joe River; that appellants had no knowledge that respondents owned the lots which they claim, but assumed that one Jones owned the land, whereas Benewah County owned it, or a part on which the houseboat was placed.

· Appellants assign error of the trial court in failing to decree them to be the owners of the houseboat; in finding that the houseboat was assessed as part of the realty; that its title passed to Benewah County in 1957 by tax deed; that the county conveyed it to respondents by county deed April 20, 1959, and that appellants were not the owners.

Appellants claim the houseboat as personal property. Respondents claim it as part of the real property conveyed to them in 1959 by the county's deed.

Appellants' arguments basically classified are:

First: That the county could tax the houseboat only as personal property and thus could execute on it only as personal property; that therefore it could not be included with the land in the tax sale.

Second: That even though the county might tax the houseboat as real property, nevertheless in fact it is personal property not affixed to the land, and therefore its title did not pass with the land or at least not by virtue of the tax deed.

I.C. § 49–218 sets out the schedule of annual fees to be paid a county assessor for licensing motor and sailboats. I.C. § 49–219 provides, "The license fees imposed by this act upon boats and motors thereof shall be in lieu of all taxes thereon," and exempts from license requirements other classifications of boats by the following subsection:

"(c) That all boats not required to be or not licensed hereunder shall be assessed and taxed as personal property, the same as other personal property is taxed in the state of Idaho."

Webster's New International Dictionary, 2nd ed., defines houseboat as "a covered boat used as a dwelling, esp. a large flat bottomed boat with a superstructure much like a house * * *."

In Nagel v. People, 229 Ill. 598, 82 N.E. 315, the Illinois court held that a houseboat on a beach can properly be called a "water craft."

Fulton v. President, etc., of Ins. Co. of North America, (D.C.N.Y.), 127 F. 413, 416, involved insurance on a houseboat which throughout the opinion was referred to as a "boat." The court, in defining "house-boat" stated, "A boat fitted up as a house, and commonly more or less resembling one in form and arrangements, for permanent or temporary habitation."

Those definitions indicate that a house-boat is considered to be in the nature of a water craft, rather than real property or appurtenant thereto.

█ Moreover, for the purpose of taxation the statute does not contemplate that a houseboat be licensed but rather, that it be assessed and taxed as personal property.

Respondents contend that the houseboat was a fixture or improvement situate on the lots, and that regardless how taxed, it remains real property and title thereto was conveyed by the county's deed.

While respondents cite authorities for the proposition that structures attached to the land are considered appurtenant and a part thereof, the question still arises whether this houseboat is a structure which in legal contemplation constitutes a fixture and thus part and parcel of the real property.

Respondents recognize that the intention of the parties as to whether a structure is a fixture and thus appurtenant to the land, is an element to be considered in determining the character of the structure.

This Court in Boise-Payette Lumber Co. v. McCornick, 32 Idaho 462, 186 P. 252, 253, recognized that many authorities regard the intention with which an article is annexed to the realty, to be the consideration of paramount importance, suggesting however, that other tests are mainly important as evidence of such intention, stating:

"Except in cases where, by contract or agreement, the intention of the party who made the annexation determines the character of the article or machine as to whether it is a chattel or a fixture, the inquiry is not strictly as to the intention of the person himself who annexed the chattel to the freehold."

And indicated that the inquiry as to the intention must be in the light of all the circumstances when tested by the common understanding of those familiar with the subject. The Court then set out three criteria of general application for determining if an article becomes a fixture:

(1) Actual or constructive annexation to the realty;

(2) Appropriation to the use of that part of the realty to which it is connected;

(3) Intention of the party so annexing to make the article a permanent accession to the realty.

Respondents cite three cases in which the articles were held to be fixtures: Near-

hoff v. Rucker, 156 Wash. 621, 287 P. 658, in which timbers supporting a monorail on trolley foundations were held to be fixtures; Doe v. Tenino Coal & Iron Co., 43 Wash. 523, 86 P. 938, wherein certain mining equipment was held to be a fixture; and Waldorf v. Elliott, 214 Or. 437, 330 P.2d 355, which held that certain grain tanks erected on farm land were fixtures. Those cases have one element in common,—in each instance the property in question was located on and attached to the land and was used in connection with the use of the land itself.

Colorado Gold Dredging Co. v. Stearns-Roger Mfg. Co., 60 Colo. 412, 153 P. 765, held that a dredgeboat, floating in an artificial pond located on mining land, was a fixture because its use was in conformity with the use of the land. That case is distinguishable from the one at bar. In the Colorado case the dredge was located completely in and upon the real property. It was moveable only within the limitations of the artificial pond and was used only in conformity with the use of the real property, namely, mining.

The following cases are also clearly distinguishable from the case at bar: Rzeppa v. Seymour, 220 Mich. 439, 203 N.W. 62, which held that a house situate on posts on the land was appurtenant to and a part of the realty. Pritchard v. Pasquotank & N. R. Steamboat Co., 169 N.C. 457, 86 S.E. 171, which held that a steamboat wharf located on a river was a fixture. Flanders v. Wood, 24 Wis. 572, which held a ferry boat dock located on a river to be a fixture. Again, those cases have one common characteristic; the structures under consideration were permanently attached to the land and were used in connection with the use of the land itself.

■ In the case at bar the lack of permanency of attachment of the houseboat to the realty appears from the record, by the following:

1. The houseboat was often floating and not resting on the land at all.

2. It was not permanently attached to the land; when attached at all, it was moored by cables. In fact it floated down the river onto adjoining land.

3. Its mobility is shown by its having been moved about.

The record also shows without dispute that when appellants came into possession of the semblance of a structure which became the houseboat, involved herein, such structure was worthless; the log floats only had a worth of $20; also, at that time the structure was partly located on Lot 19, which is not involved in this proceeding; also, that appellants intended that the reconstructed houseboat, in which they invested in excess of $1200, was to be moored

in the vicinity of Lot 19, by permission of one Jones, owner of such lot; further that the structure (exclusive of the logs upon which it rested) had no value at all, and hence no assessable value, at the time of its acquisition by appellants.

The record is also undisputed that respondents intended to and did purchase the six lots at county tax sale; that their bid for the six lots was $150 which, they admitted when divided by six, was $25 for each lot; that they made no advance investigation of the houseboat, but after the purchase of the lots they then went to the houseboat and found it padlocked and occupied.

We are constrained to the view that the houseboat was not, nor was it ever intended to be, permanently fixed or appurtenant to the land, either actually or constructively, and that it constituted personalty belonging to appellants.

The judgment is reversed insofar as it quiets title in respondents to the houseboat, referred to in the judgment as the structure situate on the described lands. The cause is remanded with instructions to modify the judgment to the end that appellants be decreed to be the owners of such houseboat or structure, I.C. § 6–401, and in all other respects the judgment is affirmed. Costs to appellants.

TAYLOR, KNUDSON, McQUADE and McFADDEN, JJ., concur.