IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 34517

LAWRENCE SPENCER,           )
                                    )

    Plaintiff-Appellant,       )

v.                           )

DEE JAMESON, an individual, DAVIDSON )
TRUST CO., Custodian for IRA/SEP )
Account No. 68-0811-30, and JAMES A. )
RAEON, Successor Trustee,        )
                                    )
    Defendants-Respondents.     )

Boise, February 2009 Term

2009 Opinion No. 85

Filed: June 16, 2009

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing D. Haynes, District Judge.

District court order granting summary judgment, <u>reversed.</u>

Ian Duncan Smith, Coeur d'Alene, argued for appellant.

Chapman Law office, PLLC, Coeur d'Alene, for respondent Jameson. Michael Ryan Chapman argued.

Elsaesser, Jarzabek, Anderson, Marks, Elliott & McHugh, Chtd., Coeur d'Alene, for respondent Davidson Trust. Bruce A. Anderson argued.

---

BURDICK, Justice

## I. NATURE OF THE CASE

This case arises out of two non-judicial foreclosure sales for separate but related deeds of trust. Appellant Lawrence Spencer appeals from the district court's order of summary judgment in favor of Respondent Davidson Trust Company, custodian for IRA/SEP account No. 68-0811-30 and James Raeon, successor trustee (Davidson Trust); and Respondent Dee Jameson, the trust beneficiary. We reverse the district court's award of summary judgment and remand for a determination of the amount of sale proceeds to be distributed along with who is entitled to such proceeds under Idaho Code § 45-1507.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2002, Spencer executed a promissory note for $90,000 in favor of Davidson Trust. The note was secured by a Deed of Trust (DOT No. 1) on Spencer's real property Parcels Nos. 1, 2, and 3. Parcel No. 3 also included title to a 1981 Skyline mobile home, VIN # 01910302P. A few months later on November 13, 2002, Spencer entered into a Loan Commitment Agreement (Agreement) with Davidson Trust for a proposed loan in the amount of $65,000. The Agreement provided that the loan was to be secured by Parcel No. 3 along with title to a 1977 mobile home, VIN # 73165.[1] The Agreement also provided that $42,500 of the $65,000 was to be withheld from Spencer and paid to him incrementally upon completion of several tasks and improvements related to the mobile home. On November 14, 2002, Spencer executed a promissory note for $65,000 in favor of Davidson Trust for the second loan. The following day on November 15, 2002, Spencer executed a Deed of Trust (DOT No. 2) as security for the second note. DOT No. 2 conveyed Parcel No. 3 by description, but made no reference to the 1977 mobile home, or the Agreement itself.

Between November 2002 and March 2004, Spencer completed six of the seven items set forth in the Agreement. It is undisputed that Spencer failed to complete item (g), which held back $5,000 pending the completion of certain improvements entitled "[m]obile remodel costs." These improvements included "windows, carpets, drywall, etc. (to be paid upon completion)." Because Spencer did not complete item (g), he was only distributed $60,000 of loan proceeds for the second loan.

Spencer later defaulted on his repayment obligations under both Deeds of Trust. On February 24, 2005, the trustee sold the deeds at two separate non-judicial foreclosure sales. It is undisputed that Spencer received proper notice for both sales. The sale of DOT No. 2 was conducted first at 10:00 a.m. Spencer did not attend this sale. Davidson Trust submitted a credit bid of $86,507.45, which included the $5,000 of loan proceeds withheld under item (g) of the Agreement. This was the highest bid and Davidson Trust was given a Trustee's Deed to Parcel No. 3. The sale of DOT No. 1 was conducted next at 10:30 a.m. Spencer did attend this sale and bid $10 for the mobile home. Davidson Trust submitted a credit bid in the amount of $204,074.37, which Davidson Trust calculated as being the cumulative amount owing under both

---

[1] During oral argument, Spencer's counsel conceded that the parties intended for the 1981 Skyline mobile home, rather than the 1977 mobile home, to serve as collateral under the Agreement.

deeds of trust. Davidson Trust submitted the highest bid and was given a Trustee's Deed to Parcels Nos. 1, 2, and 3 and title to the 1981 Skyline mobile home.

The Trustee's Deed for DOT No. 2 was recorded first at 11:29 a.m. and the Trustee's Deed for DOT No. 1 was recorded second at 11:30 a.m. The Trustee's Deed for the sale of DOT No. 1 listed the 1981 Skyline mobile home as part of the property sold; the Trustee's Deed for the sale of DOT No. 2 did not include any reference to a mobile home. The trustee subsequently executed an Amended Trustee's Deed on March 23, 2005 for DOT No. 1, which conveyed all three parcels and title to the 1981 Skyline mobile home as being the property secured under both Deeds of Trust.

On April 27, 2006, approximately fourteen months after the sales, Spencer filed suit against Jameson and Davidson Trust, claiming irregularities in both non-judicial foreclosure sales. Spencer sought a declaratory judgment to set aside and reschedule the sales. In the alternative, Spencer argued that a monetary surplus was owed to him under I.C. § 45-1507.

On November 3, 2006, Jameson moved for summary judgment, which Davidson Trust joined. The district court granted summary judgment in favor of the respondents. Spencer filed a motion for clarification and reconsideration, which the district court denied. Spencer now appeals from the district court's order of summary judgment.

### III. STANDARD OF REVIEW

When reviewing an order for summary judgment, this Court applies the same standard of review as was used by the trial court in ruling on the motion for summary judgment. *See Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 307, 160 P.3d 743, 746 (2007). Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Cristo*, 144 Idaho at 307, 160 P.3d at 746 (quoting *Infanger v. City of Salmon,* 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002)).

This Court liberally construes all disputed facts in favor of the nonmoving party, and all reasonable inferences drawn from the record will be drawn in favor of the nonmoving party. *Id.* If reasonable persons could reach differing conclusions or draw conflicting inferences from the

3

evidence presented, then summary judgment is improper. *McPheters v. Maile*, 138 Idaho 391, 394, 64 P.3d 317, 320 (2003).

## IV. ANALYSIS

On appeal, Spencer claims the district court erred in granting summary judgment to the respondents. First, Spencer argues that the character of the 1981 Skyline mobile home is personal property rather than real property and, therefore, the mobile home was improperly transferred to the trustee for purposes of non-judicial foreclosure under I.C. § 45-1501, *et seq.*[2] In addition, Spencer argues the sales should be set aside pursuant to I.C. § 45-1508 because Davidson Trust submitted bids in excess of the amounts he owed under the notes secured by the trust deeds. Alternatively, Spencer argues that he is entitled to surplus proceeds from the sales under I.C. § 45-1507. Each argument will be discussed in turn.

### A. Character of the Mobile Home

Spencer argues that the character of the 1981 Skyline mobile home is personal property rather than real property and, therefore, the mobile home was not subject to foreclosure. Before addressing Spencer's argument, we find it necessary to clarify why this issue is pertinent to the case. Upon manufacture, a mobile home is a movable chattel and characterized as personal property. Once a mobile home is affixed to land it is converted to real property. *See* I.C. § 55-101. Accordingly, a mobile home may be considered either real property or personal property under Idaho law. However, a deed of trust, by definition, is limited to the conveyance of real property. I.C. § 45-1502(3). Thus, we must determine whether at the time of the sale the 1981 Skyline mobile home was converted to real property and, therefore, was properly transferred to the trustee for purposes of non-judicial foreclosure under I.C. § 45-1503; or whether the mobile remained personal property, in which case the mobile home was not subject to foreclosure under the statute.

The Idaho Legislature has defined "real property" under Title 55, Chapter 1, which governs property and ownership, as follows:

1. Lands, possessory rights to land, ditch and water rights, and mining

claims, both load and placer.

2. That which is affixed to land.

---

[2] Idaho Code § 45-1501 has been repealed; therefore, the statutory provisions governing the non-judicial foreclosure of trust deeds will be referred to as I.C. § 45-1502, *et seq*. throughout the remainder of this opinion.

3. That which is appurtenant to land.

I.C. § 55-101. As set forth above, a deed of trust is limited to the conveyance of real property. *See* I.C. § 45-1502(3). Accordingly, that which is land, affixed to the land, or appurtenant to the land, and falls within the parameters of the real property described in the deed, is conveyed under the deed of trust. Idaho Code § 45-1502(5) provides additional limitations on what real property can be transferred to the trustee for purposes of non-judicial foreclosure. In this case, the question is whether the 1981 Skyline mobile home was affixed to the real property described as Parcel No. 3 in DOT No. 1 and DOT No. 2 at the time of the sale. When faced with the issue of fixture, we apply three general tests: "(1) Actual or constructive annexation to the realty; (2) Appropriation to the use of that part of the realty to which it is connected; [and] (3) Intention of the party so annexing to make the article a permanent accession to the realty." *Prudente v. Nechanicky*, 84 Idaho 42, 47, 367 P.2d 568, 570–71 (1961).

The evidence demonstrates that the 1981 Skyline mobile home was affixed to the land at the time of sale and, therefore, was converted to real property. *See* I.C. § 55-101. As set forth in Ed Jameson's affidavit dated November 3, 2006, Spencer completed items (a) through (f) in the Agreement related to the mobile home, which were: (a) well set-up, with pump, pressure tanks, lines; (b) septic system with inspections, and hookup to home; (c) driveway completion to county standards; (d) power lines and pedestal, with inspections and hookup; (e) mobile title in file; and (f) foundation, decks, and mobile set-up, including attachment and conversion to real property. These tasks and improvements show: (1) the mobile home was actually annexed to the realty, (2) the mobile home was appropriated to the use of that part of the realty to which the home was connected, and (3) it was Spencer's intention to make the mobile home a permanent accession to the realty. *See id.* Most persuasively, item (f) specifically required "attachment and conversion to real property." Because the 1981 Skyline mobile home was affixed to the land at the time of sale, we hold that the mobile home was properly transferred to the trustee for purposes of non-judicial foreclosure under I.C. § 45-1503.

**B. Credit Bids**

Next, Spencer argues that Davidson Trust's bids were in excess of the amounts owing under the notes secured by the trust deeds and, therefore, Davidson Trust did not "forthwith pay the price bid" before the trustee executed and delivered the Trustee's Deeds as required by I.C. § 45-1506(9). Spencer further argues that because Davidson Trust is not a good faith purchaser for

5

value, I.C. § 45-1508 mandates that the sales be set aside due to Davidson Trust's failure to comply with this statutory provision. Each sale will be discussed separately.

1. The sale for DOT No. 2 is final.

First, Spencer argues Davidson Trust's credit bid for DOT No. 2 was $5,000 in excess of the amount Spencer owed under the note secured by the trust deed. Although the original amount of the loan was $65,000, only $60,000 was actually disbursed to Spencer; Davidson Trust withheld the $5,000 because Spencer failed to complete item (g) of the Agreement which called for "[m]obile remodel costs, including windows, carpets, drywall, etc. (to be paid upon completion)." Davidson Trust expended $45,000 to complete these improvements after the sale. The district court held the $5,000 was properly included in Davidson Trust's credit bid for two reasons. First, the district court determined that pursuant to the terms of DOT No. 2, Davidson Trust was permitted to make the $5,000 advances to protect its security interest (the mobile home) and to charge Spencer's account for the expenditure. The district court also determined that Davidson Trust could charge Spencer's account for the $5,000 because he agreed to complete the "mobile remodel costs" listed in item (g) of the Agreement, which Spencer failed to do.

A trust deed must be foreclosed in the manner set forth in I.C. § 45-1506, which requires in part that "[t]he purchaser at the sale shall forthwith pay the price bid and upon receipt of payment the trustee shall execute and deliver the trustee's deed to such purchaser . . . ." I.C. § 45-1506(9). In this case, Davidson Trust submitted a credit bid of $86,507.45 for DOT No. 2 and the trustee subsequently executed a Trustee's Deed to Davidson Trust for the sale. This Court recently determined that a credit bid in a foreclosure sale made by the lender holding the note is the equivalent of a cash sale and, therefore, satisfies the statutory requirements for purchasing real property at a trustee's sale under I.C. § 45-1506(9). *Federal Home Mortgage Corp. v. Appel*, 143 Idaho 42, 45, 137 P.3d 429, 432 (2006). However, the Court imposed a limitation on credit bids, requiring that the holder of a deed of trust note credit bid "in all or part of the amount owing pursuant to the note" at the time of sale. *Id.*

We find that Davidson Trust bid in excess of the amount of credit available to it under DOT No. 2. Only $60,000 of the $65,000 was actually advanced to Spencer and thus "*owing pursuant to the note*" at the time of the sale. *Id.* (emphasis added). Accordingly, Davidson Trust bid in excess of the amount of credit available to it under the note secured by DOT No. 2 by at

6

least $5,000 and, therefore, did not pay the price owing before the trustee executed the Trustee's Deed for DOT No. 2 as required by I.C. § 45-1506(9).[3]

The respondents argue that the $5,000 was properly included in Davidson Trust's bid because DOT No. 2 specifically allows Davidson Trust to make any advances necessary to protect the security interest and to charge Spencer's account for such advances. However, the $5,000 was not advanced until after the sale. In Ed Jameson's Affidavit dated March 27, 2007, he states that approximately $60,000 was expended in relation to the three parcels of property, and of that $60,000, over $5,000 was expended to complete item (g) of the Agreement. Jameson stated this expenditure was made "[b]etween February 24, 2005, and April 27, 2006." The sale for DOT No. 2 occurred at 10:00 a.m. on the morning of February 24, 2005. Thus, the $5,000 was not expended until *after* the sale of DOT No. 2, and accordingly did not constitute an amount owing under the note at the time of the sale.

The respondents also argue the $5,000 was properly included in Davidson Trust's bid because Spencer failed to complete the "mobile remodel costs" as required under item (g) of the Agreement. As set forth above, Davidson Trust did not expend the $5,000 it withheld to complete the improvements until after the sale of DOT No. 2. Therefore, the $5,000 was not an amount owing at the time of the sale.

Finally, the respondents argue the $5,000 should be treated the same as property taxes, which were properly charged to Spencer's account and included in Davison Trust's credit bid. However, the payment of property taxes was an obligation secured by DOT No. 2, whereas the "mobile remodel costs" were not. Property may only be transferred to the trustee for purposes of non-judicial foreclosure pursuant to I.C. § 45-1503(1) to secure an obligation under the trust deed. Although Spencer was obligated to immediately repay sums expended by Davidson Trust under Paragraph A(5) of DOT No. 2, he was not required to repay sums not expended at the time of sale.

Based on our analysis set forth above, we find that Davidson Trust did not pay the price bid before the trustee executed the Trustee's Deed to DOT No.2 as required by I.C. § 45-1506(9). Even though Davidson Trust failed to comply with this provision, however, we find it

---

[3] Davidson Trust overbid by at least $5,000 since the interest and fees calculated for DOT No. 2 were based on $65,000 being the principal amount owed.

unnecessary to set aside the sale. Idaho Code § 45-1508, which governs the finality of the sale, states in pertinent part:

> A sale made by a trustee under this act shall foreclose and terminate all interest in the property covered by the trust deed of all persons to whom notice is given under section 45-1506, Idaho Code, and of any other person claiming by, through or under such persons and such persons shall have no right to redeem the property from the purchaser at the trustee's sale . . . . [A]ny failure to comply with the provisions of section 45-1506, Idaho Code, shall not affect the validity of a sale in favor of a purchaser in good faith for value at or after such sale, or any successor in interest thereof."

Upon initial reading of this provision, it would appear we are required to set aside the sale of DOT No. 2 due to Davidson Trust's failure to comply with I.C. § 45-1506(9), unless the Court finds that Davidson Trust is a good faith purchaser for value. Nevertheless, after reading subsections (9) and (10) of I.C. § 45-1506 in their entirety, we find that it is more reasonable to infer that the legislature did not intend for a sale to be set aside once the trustee accepts the credit bid as payment in full. Idaho Code § 45-1506(9) states:

> The purchaser at the sale shall forthwith pay the price bid and upon receipt of payment the trustee shall execute and deliver the trustee's deed to such purchaser, provided that in the event of any refusal to pay purchase money, the officer making such sale shall have the right to resell or reject any subsequent bid as provided by law in the case of sales under execution.

Immediately following this provision, Idaho Code § 45-1506(10) states:

> The trustee's deed shall convey to the purchaser the interest in the property which the grantor had, or had the power to convey, at the time of the execution by him of the trust deed together with any interest the grantor or his successors in interest acquired after the execution of such trust deed.

Thus, although I.C. § 45-1506(9) requires that the purchaser forthwith pay the price bid, the sale is final once the trustee accepts the bid as payment in full unless there are issues surrounding the notice of the sale (which are admittedly not present in this case). This interpretation promotes the legislature's interest in preserving the finality of title to real property. In addition, our interpretation does not deprive trust deed grantors of a statutory remedy in cases such as this where the trustee wrongfully accepts a credit bid as payment in full. Grantors may still turn to I.C. § 45-1507 which governs the manner which the sale proceeds are to be distributed for relief. Therefore, we hold that the sale for DOT No. 2 was final once the trustee accepted Davidson Trust's bid as payment in full and subsequently executed the Trustee's Deed for DOT No. 2.

8

Because the sale of DOT No. 2 is final, we need not address whether Davidson Trust is a good faith purchaser for value, as that determination would only be applicable to our analysis if we found reason to set aside the sale.

2. The sale for DOT No. 1 is final.

Spencer also argues the sale for DOT. No. 1 should be set aside because Davidson Trust bid $86,507.45 in excess of the amount owing under the note secured by the trust deed. During the trustee's sale for DOT No. 1, Davidson Trust submitted a credit bid in the amount of $204,074.37, which included the remaining principal balance under the promissory note secured by DOT No. 1, along with the alleged payoff amount for the second note secured by DOT No. 2 and related fees.

The respondents assert they were compelled to satisfy the amount owing under the note secured by DOT No. 2 for their own protection and, therefore, properly included the payoff amount for DOT No. 2 and related fees in their bid for DOT No. 1. In support of their assertion, the respondents cite to *Federal Home Loan Mortgage Corp. v. Appel*, 143 Idaho 42, 137 P.3d 429 (2006), and *Thompson v. Kirsch*, 106 Idaho 177, 677 P.2d 490 (Ct. App. 1984). In *Federal Home Loan*, debtors in a foreclosure sale argued that a credit bid made by the lender for the amount owed on the note satisfied the statutory requirements for "purchase money" or "paying the price" pursuant to I.C. § 45-1506(9). *Federal Home Loan,* 143 Idaho at 44, 137 P.3d at 431. This Court held "that where the holder of the deed of trust note is the bidder, crediting the bid against the note is the equivalent of a cash sale." *Id.* at 45, 137 P.3d at 432. Thus, *Federal Home Loan* dealt strictly with whether a credit bid constitutes "paying the price" for a trust deed under the statute.

*Thompson*, on the other hand, is more relevant to the respondents' argument. In that case, the Thompsons, holders of a second deed of trust, satisfied a first deed of trust to prevent foreclosure of the prior lien. 106 Idaho at 181, 677 P.2d at 494. The district court included the amounts the Thompsons paid to service the debt on the first deed of trust in determining the amount of mortgage indebtedness that was owed under the Thompsons' second deed of trust. *Id.* On appeal, the Kirsches, those indebted under both deeds of trust, argued it was error for the district court to include these amounts. *Id.* The Thompsons, however, contended that I.C. § 45-105 entitled them to reimbursement for any sums they paid in satisfaction of the first deed of trust. *Id.* Idaho Code § 45-105 states: "Where the holder of a special lien is compelled to satisfy

9

a prior lien for his own protection, he may enforce payment of the amount so paid by him, as part of the claim for which his own lien exists." The Idaho Court of Appeals held that the second deed of trust was the functional equivalent to a mortgage and that I.C. § 45-105 entitled the Thompsons to include payments they made to prevent foreclosure of the first deed of trust as part of the mortgage indebtedness created by their junior encumbrance. *Id.* at 181–82, 677 P.2d at 494–95. (citing *Miller v. Stavros*, 174 So.2d 48, 49 (Fla. Dist. Ct. App. 1965) (holding that "amounts paid by the holder of a second mortgage to protect his security are properly included in a decree foreclosing the second mortgage")). Conversely, this case does not involve the holder of a special lien paying off a "prior lien." *See* I.C. § 45-105. DOT No. 1 was the prior lien under the facts of this case, which was sold after DOT No.2. Davidson Trust did not make advances to prevent the foreclosure of DOT No. 1 before it bid on DOT No. 2. Therefore, Davidson Trust was not compelled to satisfy a prior lien for its own protection when it bid on DOT No. 1.

The respondents also argue that the $86,507.45 was properly included in its bid for DOT No. 1 because DOT No. 1 contains a future advance clause. DOT No. 1 states that the property conveyed "secure[s] payment of all such further sums as may hereafter be loaned or advanced by the Beneficiary herein to the Grantor herein . . . ." At the time DOT No. 1 was sold, the $65,000 loan advance plus interest and fees had already been paid off as the trustee had previously accepted Davidson Trust's bid for $86,507.45 for DOT No. 2 as payment in full. As such, only $117,566.92 was owing under the note secured by DOT No. 1 at the time of sale. Yet, Davidson Trust bid $204,074.37. Davidson Trust did not pay the full price bid before the trustee executed the Trustee's Deed for DOT No. 1 as required by I.C. § 45-1506(9). Still, we find it unnecessary to set aside the sale. The trustee accepted Davidson Trust's bid for DOT No. 1 as payment in full, which, as set forth above, was the point in time when the sale became final. Again, because the sale for DOT No. 1 is final, we need not address whether Davidson Trust is a good faith purchaser for value.

The district court also held that the sale for DOT No. 1 is final despite the irregularity in Davidson Trust's credit bid, but did so under the reasoning that Spencer had failed to demonstrate harm resulting from the excessive credit bid. Idaho Code § 45-1508 does not require that the grantor to a deed of trust demonstrate harm resulting from an irregularity in the foreclosure sale in order to have the sale set aside. The district court cannot impose this additional requirement under the statute, thereby increasing the plaintiff's burden, just because it

10

does not agree with the result. Thus, although we agree with the district court that the sale for DOT No. 1 should not be set aside, we do so under different reasoning.

Although neither party attributes fault to the trustee, we note that I.C. § 45-1506(9) does not authorize a trustee to execute a trustee's deed until the buyer pays the entire price bid. Accepting an excessive credit bid has a chilling effect on the trustee's ability to obtain the maximum amount of recovery for the debtor's property. Here, the trustee executed the Trustee's Deeds for DOT No. 1 and DOT No. 2 before Davidson Trust paid its bids in full. Pursuant to I.C. § 45-1506(9), the trustee should have required that Davidson Trust pay cash for the excess amounts before executing the Trustee's Deeds.

## C. Surplus

In the alternative, Spencer argues that he is entitled to surplus proceeds from both sales. Idaho Code § 45-1507 requires that the trustee apply the proceeds from the foreclosure sale as follows:

> 1) To the expenses of the sale, including a reasonable charge by the trustee and a reasonable attorney's fee.
>
> (2) To the obligation secured by the trust deed.
>
> (3) To any persons having recorded liens subsequent to the interest of the trustee in the trust deed as their interests may appear.
>
> (4) The surplus, if any, to the grantor of the trust deed or to his successor in interest entitled to such surplus.

I.C. § 45-1507. As set forth above, Davidson Trust bid $86,507.95 in excess of the amount owing under the note secured by DOT No. 2, and also bid at least $5,000 in excess of the amount owing under the note secured by DOT No. 2. Accordingly, there are proceeds from the sales that go beyond the expenses of the sales and the obligations secured by the trust deeds. *See* I.C. § 45-1507.

The respondents argue that even if Davidson Trust submitted excessive bids, Spencer is not entitled to proceeds from the sales. The respondents claim that Michael Thompson, the holder of a recorded lien on Parcel No. 3 subsequent to the interest of Davidson Trust, is entitled to these proceeds under I.C. § 45-1507(3) before Spencer is entitled to a surplus under I.C. § 45-1507(4). This argument is based on two subordination agreements signed by Thompson, through which Thompson subordinated his interest in Parcel No. 3 to both Deeds of Trust held by Davidson Trust. Based on these subordination agreements, the respondents argue that Spencer

11

has failed to state a claim upon which relief can be granted. However, neither respondent raised this argument before the district court. In fact, Jameson argued that the subordination agreements supported the district court's award of summary judgment in his response to Spencer's motion for reconsideration. This Court will not consider arguments raised for the first time on appeal. *Johannsen v. Utterbeck*, 146 Idaho 423, 429, 196 P.3d 341, 347 (2008).

In addition, the respondents argue that the $86,507.45 was properly deducted under I.C. § 45-1507(3) since the lien for DOT No. 2 was still a subsequently recorded lien at the time the Trustee's Deed for DOT No. 1 was recorded. The respondents' argument is based on the district court's determination that the Trustee's Deed for DOT No. 1 was recorded at 11:29 a.m. and that the Trustee's Deed for DOT No. 2 was recorded at 11:30 a.m. This argument fails for two reasons. First, the district court erred in determining the order in which the sales were recorded; the sales were actually recorded in reverse order—the Trustee's Deed for DOT No. 2 was recorded first at 11:29 a.m. and the Trustee's Deed for DOT No. 1 was recorded second at 11:30 a.m. More importantly, the order in which the Trustee's Deeds were recorded is irrelevant. The lien on DOT No. 2 was extinguished when the trustee accepted Davidson Trust's bid, not when the Trustee's Deed for DOT No. 2 was executed.

Finally, the respondents argue that it would be inequitable for this Court to award Spencer a surplus. The respondents argue that because Spencer defaulted under two separate promissory notes, he will obtain a windfall if he prevails. However, equity is not available to the respondents. Idaho Code § 45-1502, *et seq.* provides a comprehensive regulatory scheme for non-judicial foreclosure of deeds of trust, which includes the exclusive remedies for a given statutory violation. "Where a statute provides an adequate remedy of law, equitable remedies generally are not available." 27A Am. Jur. 2d Equity § 213 (2008). "It is well understood that equitable principles cannot supersede the positive enactments of the legislature." *Davis v. Idaho Dept. of Heath & Welfare*, 130 Idaho 469, 471, 943 P.2d 59, 61 (Ct. App. 1997). Because I.C. § 45-1502, *et seq.* applies and dictates the requirements for relief in this case, the Court will not allow equity to interfere.

Based on the analysis set forth above, we hold there are sale proceeds in excess of the amounts secured by the trust deeds. However, part of the property conveyed subject to the trust deeds was Parcel No. 3, upon which Thompson has an existing lien. Therefore, we reverse in part the district court's award of summary judgment in favor of the respondents and remand for a

12

determination of the amount of sale proceeds to be distributed along with a determination of who is entitled to such proceeds under I.C. § 45-1507.

**D. Attorney Fees**

All parties request attorney fees on appeal. First, Jameson requests attorney fees under I.C. §§ 12-120(3), 12-121, and 12-123. "[Idaho Code] § 12-120(3) . . . allows recovery of attorney fees by the prevailing party in any commercial transaction." *Mackay v. Four Rivers Packing Co.,* 145 Idaho 408, 415, 179 P.3d 1064, 1071 (2008). Idaho Code § 12-121 allows recovery of attorney fees by the prevailing party only if the Court determines that the appeal was brought or defended frivolously, unreasonably, or without foundation. Thus, both statutes require that the party requesting attorney fees be a prevailing party. Here, Jameson is not a prevailing party and, therefore, is not entitled to attorney fees under I.C. §§ 12-120(3) or 12-121.

We also deny Jameson's request for attorney fees on appeal under I.C. § 12-123. Idaho Code § 12-123(2)(b) sets forth a specific procedure for attorney fees, requiring a motion by a party and notice and a hearing in the trial court. *See Roe Family Servs. v. Doe*, 139 Idaho 930, 938, 88 P.3d 749, 757 (2004). Those were not followed in this case. Furthermore, the statute limits an award of attorney fees to twenty-one days after the entry of judgment in a civil action. Idaho Code § 12-123(2)(a) states: "[A]t any time prior to the commencement of the trial in a civil action or within twenty-one (21) days after the entry of judgment in a civil action, the court may award reasonable attorney's fees to any party to that action adversely affected by frivolous conduct." The statute makes no provision for attorney fees on appeal. Therefore, attorney fees are not awardable under I.C. § 12-123 for the appellate process.

Davidson Trust requests attorney fees on appeal under I.C. § 12-121. Again, I.C. § 12-121 allows an award of "reasonable attorney's fees to the prevailing party . . . ." I.C § 12-121. Davidson Trust is not a prevailing party. Therefore, it is not entitled to attorney fees under I.C § 12-121.

Finally, Spencer requests attorney fees pursuant to I.C. § 12-121. As set forth above, reasonable attorney fees are available to the prevailing party under I.C. § 12-121 only if the Court determines that the appeal was brought or defended frivolously, unreasonably, or without foundation. *Garcia*, 144 Idaho at 546, 164 P.3d at 826. Although Spencer is the prevailing party on appeal, we find no evidence to suggest that the respondents defended this appeal frivolously,

13

unreasonably, or without foundation. I.R.C.P. 54(e)(1). As such, we deny Spencer's request for attorney fees on appeal.

## V. CONCLUSION

For the reasons set forth above, we reverse the district court's order of summary judgment in favor of Davidson Trust and remand with instructions for the district court to determine the amount of sale proceeds to be distributed along with a determination of who is entitled to such proceeds under I.C. § 45-1507. We award Spencer court costs, but not attorney fees, on appeal.

Chief Justice EISMANN and Justices W. JONES and HORTON, **CONCUR.**

J. JONES, J., specially concurring.

I concur in the Court's opinion even though it produces a harsh result for the Davidson Trust. Such a result could certainly have been anticipated because the bids submitted by Davidson Trust substantially exceeded the total amount owing on the obligations secured by the two deeds of trust. As noted in the opinion, a credit bid exceeding the trust deed obligation has a chilling effect on the trustee's ability to obtain the maximum amount of recovery for the debtor's property. Allowing a beneficiary to submit a credit bid in excess of the debtor's obligation would give the beneficiary an unwarranted competitive advantage over cash bidders who might be willing to pay more than the debtor's obligation. Such a practice would also deprive the debtor of any excess sale proceeds that might otherwise be available for his or her benefit. A credit bid is designed to allow the beneficiary to bid up to the total owing on the trust deed obligation without having to produce cash in that amount at the trust deed sale, not to allow the beneficiary to avoid a competitive trustee's sale.

In *Federal Home Loan Mortgage Corp. v. Appel*, 143 Idaho 42, 45, 137 P.3d 429, 432 (2006), we described the purpose of a credit bid as follows:

> There is no reason why the holder of the deed of trust note should not be able to purchase the property at a trustee sale by bidding in all or part of the amount owing pursuant to the note. After all, the holder of the note is the party to be benefitted by the sale. It makes no sense to require the note holder to bring cash to the sale in order to pay himself. His bid, if successful, immediately reduces or eliminates the debtor's obligation. We hold that where the holder of a deed of trust note is the bidder, crediting the bid against the note is the equivalent of a cash sale.

It is clear that the upper limit of a credit bid is the amount owing on the obligation secured by the trust deed. If the beneficiary were permitted to bid in excess of the amount owing on the

obligation secured by the trust deed, without having to pay the excess in cash, there would be no need for a competitive auction – the beneficiary would always be able to outbid a cash purchaser.

A trust deed beneficiary should not submit a bid in excess of the amount owing on the trust deed obligation without expecting to have to pay cash for the excess. Had a third party submitted bids identical to those submitted by the Davidson Trust, the third party would not have been excused from paying the total amount of the two bids. There is no reason to treat Davidson Trust any differently. On the other hand, a trustee should not accept a beneficiary's credit bid exceeding the trust deed obligation. Idaho Code § 45-1506(9) requires the purchaser to pay the price bid at the time of sale and provides for delivery of the trustee's deed upon receipt of payment by the trustee. The trustee is provided with options in the event of a refusal by the purchaser to pay the purchase money. Since a credit bid is limited to the amount of the obligation secured by the trust deed, the portion of a bid exceeding that amount must be paid in cash. Where the beneficiary fails to pay the excess amount in cash, he has failed to pay the price bid and the trustee, having failed to receive full payment, delivers the trustee's deed at his potential peril.

It is not entirely clear how these sales went awry. The record contains an affidavit executed by the vice president and trust officer of Davidson Trust, attached to which are two written credit bids that were apparently furnished to the trustee. The affidavit indicates that both bids were to be submitted and that they were to be submitted in the order in which the trustee actually conducted the two sales – DOT No. 2 being brought up for sale at 10:00 a.m. on February 24, 2005, and DOT No. 1 being brought up at 10:30 a.m. Thus, it appears the trustee conducted the sales as requested by Davidson Trust.

It is unknown why Davidson Trust did not attempt to handle the matter in a single sale by foreclosing DOT No. 2, including the amount owing on the obligation secured by DOT No. 1. Or, it could have foreclosed both trust deeds, seeking only the amount owing pursuant to each. Nor is it known why the trustee did not call attention to the fact that the credit bids exceeded the total available credit. The bids, as presented to and accepted by the trustee, appear destined to produce the unfortunate result actually obtained here.

15

What this case illustrates is that the beneficiary should be scrupulous in determining the amount owing pursuant to the obligation(s) secured by the deed(s) of trust[4] and, where the beneficiary does not personally attend the sale, should provide clear-cut instructions to the trustee. The case also illustrates that the trustee should pay attention to the amount owing to the beneficiary on the obligation(s) secured by the trust deed(s) and make sure that any credit bid submitted by the beneficiary does not exceed that amount, unless the beneficiary produces cash to make up the difference.

---

[4] The written credit bids also contain some overlap. Both bids included the delinquent taxes on parcel No. 3 in the amount of $1,783.36, the $5,000 amount related to item (g) of the Agreement, and attorney fees and costs in the amount of $1,865.40. While it isn't entirely clear, it appears that these duplicate items further inflated Davidson Trust's bid to its current detriment.